ORIGINAL

cc: KSC

DONNA E. RICHARDS, #7625
MARK R. ZENGER, #3511
RICHARDS & ZENGER
3016 Umi Street
Suites 204 and 211-B
Lihue, Hawaii 96766
Telephone: (808) 632-0723
Facsimile: (808) 632-0724

CHRISTOPHER S. BOUSLOG #3087-0
Law Offices of Chris Bouslog
Four Waterfront Plaza, Suite 480
500 Ala Moana Boulevard
Honolulu, Hawaii 96813-4908
Telephone: (808) 550-4995
Facsimile: (808) 550-4996

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
FEB 21 2006
at 3 o'clock and 51 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK N. BEGLEY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT; GEORGE FREITAS; MARTIN W. CURNAN; and DAVID NAWAI;<br><br>Defendants. | CIVIL NO. CV 03-00162 KSC<br><br>**PLAINTIFF MARK N. BEGLEY'S TRIAL BRIEF, CERTIFICATE OF SERVICE**<br><br>**TRIAL WEEK: MARCH 7, 2006** |

Plaintiff MARK N. BEGLEY, by and through his attorneys undersigned, hereby submits his Trial Brief pursuant to the order of the Court herein issued during the Pre-Trial Conference held in this case on February 7, 2006.

## I. INTRODUCTION

This is a case in which a Kauai Police Department (hereinafter "KPD") Lieutenant conspired with others to assault, batter and leave for dead a KPD Sergeant because he had been accusing the KPD Lieutenant, his family, other police officers and local politicians of  of being members of an organized crime ring.

Specifically, on May 17, 2002 at about 11 p.m. Plaintiff MARK N. BEGLEY ("SGT. BEGLEY") was assaulted with the knowledge, consent and participation of Defendants MARTIN W. CURNAN, a Lieutenant with the KPD (hereinafter "LT. CURNAN"), Defendant DAVID NAWAI (hereinafter "NAWAI") and one or more other unidentified individuals. LT. CURNAN and NAWAI subsequently failed to render medical aid to the seriously injured SGT. BEGLEY and failed to deliver him

to a health care facility. They also lied to and discouraged others from delivering to SGT. BEGLEY to a health care facility in the hope that he would die at home from the injuries that they inflicted upon him.

The genesis of disputes between LT. CURNAN and SGT. BEGLEY was LT. CURNAN's myriad of criminal activities and abuses of police power that he committed over a long period of time while he was a sergeant, lieutenant and head vice officer with KPD.

## II. STATEMENT OF FACTS

LT. CURNAN joined KPD as a Police Officer in 1976. Sometime prior to 1989, he was promoted to the rank of Sergeant, joining the Vice Unit. That same year, SGT. BEGLEY joined KPD as a patrol officer. In 1996, LT. CURNAN was promoted from Sergeant to Lieutenant and was transferred from the Vice Unit to be the Lieutenant-in-Charge of the Hanalei District of Patrol Services Bureau (hereinafter the "Hanalei District"). That same year, SGT. BEGLEY was also assigned to the Hanalei District.

**A. SGT. BEGLEY Confronts LT. CURNAN**

Following his transfer to the Hanalei District, SGT. BEGLEY confronted LT. CURNAN many times between 1996 and 2001 and told him that he had information that led him to believe that: LT. CURNAN was a member of a criminal organization that is based and operates on Kauai; some of the other members in the Criminal Organization included those in LT. CURNAN's immediate and extended family, some of his friends, cooperating sources and defendants in pending criminal cases and some other KPD employees, officers and supervisors; and that the Criminal Organization's primary business activities were drug trafficking and gambling. NAWAI, who is related to LT. CURNAN, was one of the many persons that SGT. BEGLEY repeatedly confronted LT. CURNAN about being a member of the Criminal Organization.

SGT. BEGLEY made it clear to LT. CURNAN that he had to stop being a part of the Criminal Organization, and that if he did not, LT. CURNAN would eventually be arrested.

In 2001, LT. CURNAN transferred from the Hanalei District to head the Vice Unit. After that, SGT. BEGLEY told LT. CURNAN that he had learned from other KPD officers that LT. CURNAN had been abusing his position to intimidate and prevent other KPD officers from arresting members of the Criminal Organization and making sure that only LT. CURNAN's "friends" within KPD were assigned to the Vice Unit.

**B. The May 17, 2002 Conspiracy**

On May 17, 2002, SGT. BEGLEY had just finished teaching a report writing class to KPD recruits at Kauai Community College when LT. CURNAN phoned him and told him to report to him at the Vice Unit Office. SGT. BEGLEY complied. Once there, LT. CURNAN told SGT. BEGLEY to get into an unmarked KPD Vice Unit Truck. Again, SGT. BEGLY complied. In the Vice Unit truck, LT. CURNAN told SGT. BEGLEY that he was taking him to a job site in a cane field being run by Ricky Waalani, Sr.

Since Ricky Waalani, Sr. was one also of the many persons that SGT. BEGLEY repeatedly confronted LT. CURNAN about being a member of the Criminal Organization, SGT. BEGLEY had some concerns about his safety. He therefore called a friend of his, Sergeant Mike GORDON, of the Kauai Police Department, who lived in Lihue. Mike GORDON was not immediately available, so BEGLEY then called another friend, Officer Buddy WILSON from the Department of Land and Natural Resources. Officer Buddy WILSON also lived in Lihue, and soon arrived at the Waalani jobsite. BEGLEY'S and WILSON'S daughters were best friends, so BEGLEY did not believe, at that time, that WILSON would allow any harm to come to BEGLEY. SGT. BEGLEY wanted to make sure that he had someone with him at the Waalani jobsite that he could trust in that regard.

At about 5:00 p.m., SGT. BEGLEY again confronted LT. CURNAN about the fact that LT. CURNAN and many of his friends and family members were engaging in ongoing criminal activities in a criminal organization and that LT. CURNAN was abusing his

position with KPD to protect his friends and family members from being arrested.

About an hour or two later, LT. CURNAN, NAWAI. SGT. BEGLEY and Officer WILSON drove together to Koloa. While in Koloa, another cousin of CURNAN, Ryan WAALANI, joined CURNAN'S group. At about 10 p.m., LT. CURNAN, NAWAI, SGT. BEGLET and Officer WILSON left Koloa together and headed back towards Lihue. By that time, SGT. BEGLEY had consumed no more than four beers, and according to various witnesses, was not intoxicated at all.

During the drive from Koloa to Officer Wilson's house, LT. CURNAN and NAWAI started to argue with SGT. BEGLEY regarding their illegal entry into a private party while in Koloa. BEGLEY had not endorsed the illegal entry, and advised them that they could not cover it up.

They arrived at Officer Wilson's home at about 11:00 p.m. LT. CURNAN, NAWAI and SGT. BEGLEY agreed to meet in the parking lot near the Dairy Queen restaurant in Lihue. When Officer WILSON attempted to go with SGT. BEGLEY to meet them, LT. CURNAN told Officer

Wilson to "get some sleep" and that LT. CURNAN was going to "take care" of SGT. BEGLEY.

As SGT. BEGLEY drove his truck away from Officer Wilson's home, LT. CURNAN yelled in a threatening manner and in the direction of BEGLEY'S truck, "We're going to get you!" LT. CURNAN and NAWAI then got in a truck together and followed SGT. BEGLEY to another location, alleged to be the old Dairy Queen parking lot in Lihue.

There, at about 11:00 p.m., LT. CURNAN, NAWAI and one or more unidentified co-conspirators unlawfully and maliciously assaulted and beat SGT. BEGLEY. They hit him from behind on the left side of the back of his head with a blunt, hard instrument with such force that he was knocked unconscious and sustained memory loss.

**C. The KPD Standards of Conduct and SHOPO Contract**

As a member of KPD, LT. CURNAN was subject to the KPD Standards of Conduct and the State of Hawaii Organization of Police Officers ("SHOPO") collective bargaining agreement with the County of Kauai, both of which require that LT. CURNAN "...be on duty at all times, whether or not they are officially on shift and

KPD Officers accordingly must always act within the law, respond to criminal activity and provide adequate assistance to those in need of protection or care whether or not they are on duty at the time of such occurrences." LT. CURNAN also had a duty to intervene when he was a witnesses to criminal activity or when a person is in danger of in need of medical care or assistance..."

Instead of complying with the KPD Standards of Conduct, the SHOPO collective bargaining agreement, common sense and simple human decency, and needing time to concoct his cover story, LT. CURNAN, along with NAWAI, drove SGT. BEGLEY around for about two hours before finally taking him home at about 1 a.m. on May 18, 2002. Along the way, SGT. BEGLEY, while still knocked out, urinated and defecated on himself while still under the control of LT. CURNAN and NAWAI. They drove past at least one emergency room and several fire stations.

**D. Lt. Curnan provided Nadine Begley with materialy false information about the nature and cause of Sgt. Begley's condition**

When LT. CURNAN and NAWAI finally got SGT. BEGLEY home, LT. CURNAN gave SGT. BEGLEY's wife, Nadine false information about the nature and cause of her husband's condition.

At first, LT. CURNAN falsely told Nadine that SGT. BEGLEY was unconscious because he was so drunk that he passed out and that the cause of his injuries was that he had fallen while exiting his vehicle and hit his head on a door. LT. CURNAN also told Nadine that SGT. BEGLEY's condition was "no big deal" and that she should not take him to an emergency room.

Relying on LT. CURNAN's lies, Nadine waited three days to take SGT. BEGLEY to the hospital. By May 21, 2002, SGT. BEGLEY's condition as a result of the assault had worsened to the point where she no longer believed LT. CURNAN and she thereafter took BEGLEY to Wilcox Hospital. From there, he was immediately transported to Queen's Hospital by medivac. He sustained a significant traumatic closed head injury with symptoms of brain damage.

A few weeks later Lt. CURNAN and NAWAI claimed to KPD investigators that SGT. BEGLEY was actually injured when NAWAI struck SGT. BEGLEY just once on the chin and that SGT. BEGLEY was then "lowered to the ground."

In June 2002 SGT. BEGLEY was examined by Dr. Leon K. Diem. On June 13, 2002, Dr. Liem issued a written opinion stating that "the presence of these findings suggests a high impact and is inconsistent with the history of the patient being struck in the chin..." and that (t)he pattern of injuries suggests that the impact most likely involved the left side with secondary right-sided injury."

In the fall of 2004, the parties completed the taking of the oral depositions LT. CURNAN, NAWAI, SGT. BEGLEY and Nadine. LT. CURNAN and NAWAI both testified to additional impacts to SGT. BEGLEY's head on May 17, 2002, none of which are consistent with the injuries that SGT. BEGLEY actually sustained.

Thereafter, SGT. BEGLEY retained Thomas D. Rogers, M.D. to render an opinion about the likely cause of SGT. BEGLEY's head injuries. By written

report dated November 8, 2004, Dr, Rogers opined that SGT. BEGLEY's head injuries were not consistent with the various reports and testimonies of LT. CURNAN and NAWAI and that they were consistent with blunt force trauma.

**E. Sgt. Begley's current condition**

SGT. BEGLEY has made a good recovery from the significant symptoms of his closed head injury, but continues to suffer from depression.

Neuropsychological testing shows that there continues to be evidence of some diffuse organic deficits. He has been on light duty at KPD ever since his June 2002 release from Queen's Hospital.

To date, SGT. BEGLEY has incurred over $18,400 in medical bills relating to the assault and has lost approximately $12,000 in wages.

## III. PLAINTIFF'S THEORIES OF LIABILITY

LT. CURNAN acted intentionally, recklessly, with willful and wanton disregard for the safety of SGT. BEGLEY and negligently by participating in an assault on SGT. BEGLEY, by failing to stop said assault, by failing to assist in the prosecution of

others involved in the assault and by failing to render reasonable and appropriate aid, including but not limited to providing false and misleading information about the causes and circumstances of SGT. BEGLEY's injuries which placed him in greater danger of harm.

NAWAI acted intentionally, recklessly, with willful and wanton disregard for the safety of SGT. BEGLEY and negligently by participating in an assault on SGT. BEGLEY, and by failing to render reasonable and appropriate aid.

LT. CURNAN and NAWAI engaged in these actions through concerted actions with each other and with other heretofore unnamed co-conspirators to accomplish a common plan to unlawfully assault and batter SGT. BEGLEY.

## III. POINTS OF LAW.

### A. Conspiracy

Conspiracy is a concerted action by two or more persons to accomplish a common plan or design by unlawful means. Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co., Inc., 91 Haw. 224, 982

P.2d 853 (1999). See also Doleman v. Meiji Mutual Life Insurance Co., 727 F.2d 1480, (9th Cir. 1984).

B. **Assault and Battery**[1]

Under Common law, the tort of assault is committed when a person acts with intent to cause another a nonconsensual harmful or offensive contact or apprehension thereof, and the other person apprehension imminent contact, Garcia v. United States, 826 F.2d 806, 910 n. 9 (9th Cir. 1987)

Common law battery is the same as assault except that the contact occurs.

C. **Intentional Infliction of Emotional Distress**

To recover for international infliction of emotional distress, SGT. BEGLEY must prove: (1) that the Defendants' actions that allegedly caused Plaintiff harm were intentional; (2) that the Defendants's actions were unreasonable; and (3) that the Defendants

---

[1] SGT. BEGLEY is cognizant of the fact that on Motions for Summary Judgment brought by LT. CURNAN and Defendants FREITAS and the COUNTY OF KAUAI, the substantive claims for Assault and Battery were dismissed. However, in light of the facts that the Court left intact SGT. BEGLEY's Conspiracy claim as against LT. CURNAN and NAWAI and that the object of the conspiracy, as to them, was to assault and batter SGT. BEGLEY, the law of the substantive claim that underlies the object and purpose of the Conspiracy Claim will in all likelihood be at issue at the jury-waived trial.

should have recognized that their actions were likely to result in illness. Wong v. Panis, 7 Haw.App. 414, 421, 772 P.2d 695, 700, (Haw, Ct. App. 1989). An act is unreasonable if it is without just cause or excuse and beyond all bounds of decency[.] In other words, the act complained of must be outrageous, as that term is employed in the Restatement (Second) of Torts ... § 46 (1965)." Takaki v. Allied Machinery Corp., 87 Haw. 57, 66 n. 13, 951 P.2d 507, 516 n. 13, (1998).

**D. Negligent Infliction of Emotional Distress**

To recover for negligent infliction of emotional distress, SGT. BEGLEY must show: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress and 3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress. Tran v. State Farm Mutual Automobile Insurance Co., 999 F.Supp. 1369, 1375. A cognizable claim for negligent infliction of emotional distress under Hawaii law also "requires a physical injury to either a person on property," Calleon v. Miyagi 76 Haw. 310, 320, 876 P.2d

1278, 1288 (1994) (as amended by grant of reconsideration on July 15, 1994), or mental illness.

**IV. <u>RELIEF SOUGHT</u>**

SGT. BEGLEY prays for relief against LT,. CURNAN and NAWAI, jointly and severally, as follows:

A. General damages.

B. Special damages.

C. Punitive and/or exemplary damages in an amount of sufficient to punish and deter the conduct of Defendants.

D. Cost of suit.

E. Pre and post judgment interest;

F. Attorneys' fees and costs.

DATED: Honolulu, Hawaii, February 21, 2006.

MARK R. ZENGER
DONNA E. RICHARDS
Attorneys for Plaintiff
MARK N. BEGLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK N. BEGLEY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT; GEORGE FREITAS; MARTIN W. CURNAN; and DAVID NAWAI;<br><br>Defendants. | CIVIL NO. CV 03-00162 KSC<br><br>**CERTIFICATE OF SERVICE** |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the within will be duly served on the following in the manner described below:

| | Mailed | Delivered |
|---|---|---|
| MICHAEL J. McGUIGAN, ESQ.<br>ELMIRA K. L. TSANG, ESQ.<br>Reinwald O'Connor & Playdon<br>Pacific Guardian Center<br>Makai Tower, Suite 2400<br>733 Bishop Street<br>Honolulu, Hawaii 96813<br><br>Attorneys for Defendant<br>MARTIN W. CURNAN | | (X) |

| | Mailed | Delivered |
|---|---|---|
| DAVID NAWAI<br>P. O. Box 1769<br>Lihue, Hawaii 96766<br><br>Pro Se Defendant | (X) | |

DATED: Honolulu, Hawaii, February 21, 2006.

MARK R. ZENGER
DONNA E. RICHARDS
CHRISTOPHER S. BOUSLOG
Attorneys for Plaintiff
MARK N. BEGLEY