ORIGINAL

cc: KSC

DONNA E. RICHARDS, #7625
MARK R. ZENGER, #3511
RICHARDS & ZENGER
3016 Umi Street
Suites 204 and 211-B
Lihue, Hawaii 96766
Telephone: (808) 632-0723
Facsimile: (808) 632-0724

CHRISTOPHER S. BOUSLOG #3087-0
Law Offices of Chris Bouslog
Four Waterfront Plaza, Suite 480
500 Ala Moana Boulevard
Honolulu, Hawaii 96813-4908
Telephone: (808) 550-4995
Facsimile: (808) 550-4996

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
FEB 21 2006
at 4 o'clock and 30 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK N. BEGLEY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT; GEORGE FREITAS; MARTIN W. CURNAN; and DAVID NAWAI;<br><br>Defendants. | CIVIL NO. CV 03-00162 KSC<br><br>**PLAINTIFF MARK N. BEGLEY'S MEMORANDUM IN OPPOSITION TO "DEFENDANT MARTIN W. CURNAN'S MOTION IN LIMINE TO EXCLUDE REFERENCE TO STANDARD OF CONDUCT, POLICE DEPARTMENT, COUNTY OF KAUAI" FILED ON FEBRUARY 15, 2006, CERTIFICATE OF SERVICE**<br><br>**TRIAL WEEK: MARCH 7, 2006** |

**PLAINTIFF MARK N. BEGLEY'S MEMORANDUM IN OPPOSITION TO "DEFENDANT MARTIN W. CURNAN'S MOTION IN LIMINE TO EXCLUDE REFERENCE TO STANDARD OF CONDUCT, POLICE DEPARTMENT, COUNTY OF KAUAI" FILED ON FEBRUARY 15, 2006**

I. INTRODUCTION

Defendant Curnan's motion in limine was filed on February 15, 2006. The deadline for filing motions in limine was February 14, 2006. This Motion in Limine is untimely filed and should accordingly be denied.

Curnan attempts to contend that Kauai County Police Standards of Conduct "have no relevance to the remaining charges" against Curnan and "would create unfair prejudice violative of Federal Rules of Evidence, Rule 403."

Curnan asserts that he expects the Plaintiff to use the Standards of Conduct "to impeach Curnan".

Curnan states that "there has been no findings that Curnan was in violation of any standard of conduct of the Kauai Police Department or that any proceedings had commenced for the purpose".

Curnan claims 10th Circuit decisions in which police standard operating procedures were excluded due to a lack of relevance, and for concern of "undue jury confusion, tendency to mislead the jury, and undue

prejudice." Reference is made to the Federal Rules of Evidence 403.

Curnan states that the allegations by Begley regarding Curnan's violation of police standards are nothing more than "conclusory statements designed to have legally operative affects".

## II. DISCUSSION

Two of the three remaining claims in this action are the Intentional Infliction of Emotional Distress and the Negligent Infliction of Emotional Distress. This Court has previously stated that to recover for intentional infliction of emotional distress, "plaintiff must prove: (1) that the defendant's actions that allegedly caused plaintiff harm were intentional; (2) that the defendants' actions were unreasonable; and (3) that the defendants should have recognized that their actions were likely to result in illness.

The Kauai Police Standards of Conduct are relevant to proving Defendant Curnan's "intent" to inflict emotional distress upon the Plaintiff, as well as "knowledge" and the "absence of mistake or accident" (Federal Rules of Evidence 404b). A copy of the stan-

dards of conduct is issued to each Kauai Police Officer. Kauai Police Department General Orders require each police officer to familiarize himself with the standards of conduct, and to abide by them 24 hours a day, seven days a week. Kauai police officers are paid a differential for this requirement. Defendant Curnan should have been familiar with the requirements of the standards of conduct on the night of the Plaintiff's serious injury. If Defendant Curnan was not familiar with those standards, he should have still known that it was his duty to be familiar with them.

Federal Rules of Evidence, Rule 401 (definition of "Relevant Evidence"), states that "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Federal Rules of Evidence, Rule 402, states that "all relevant evidence is admissible, except as otherwise provided... by these rules..." Federal Rules of Evidence, Rule 403, states that relevant evidence may be excluded if its probative value is "substan-

tially outweighed" by the danger of "unfair prejudice".

Plaintiff and Defendant Curnan have already waived their right to a jury trial, and have agreed to a trial by Judge.

Regarding "Impeachment", Federal Rules of Evidence, Rule 607 states that the "The credibility of a witness may be attacked by any party, including the party calling the witness." Regardless of whether or not impeachment of Curnan is the Plaintiff's purpose for introducing the standards of conduct as evidence, the Federal Rules of Evidence give the Plaintiff this right.

Officers, even off-duty officers of the Kauai Police Department have a duty under these standards to intercede in unlawful conduct, make arrests and to render aid to those in need. That Curnan did none of these things is evidence of malicious intent.

The applicable standards of conduct are relevant to the claims of conspiracy, and the intentional and/or negligent infliction of emotional distress. The standards of conduct are relevant, and have probative value in determining facts within the remaining claims.

Though the Plaintiff and Defendant Curnan have already agreed to a trial by Judge, Curnan's contention that the standards of conduct will cause "undue jury confusion, tendency to mislead the jury, and undue prejudice" are without merit and are certainly outweighed by the probative value of the evidence.

The standards of conduct are not confusing. They are clear and simple in their application and direction. They are public record. Applying the standards of conduct only to the Defendant's intent and/or neglect, knowledge and absence of mistake, should not mislead a jury, and would certainly not mislead a Court. The standards of conduct are admissible evidence, and still relevant to the remaining claims, however, they will not so arouse the emotions that logical reasoning will be abandoned.

The 10th Circuit Court decisions below, referenced by Defendant Curnan, deal with a police department's standard operating procedures which are normally more detailed and extensive than standards of conduct. Significant points within these decisions, beneficial to the Plaintiff's argument, were omitted and/or mis-

represented by Defendant Curnan.

In L'esperance v. John Mings, U.S. Dist. Court for the District of New Mexico (2003 U.S. Dist. LEXIS 26754), the Court deferred ruling on the admissibility of standard operating procedures until copies of the pertinent procedures were supplied to the Court. After reviewing the documents, The Court concluded that such evidence (of less intrusive means) was not relevant to the pertinent inquiry of whether that officer (John Mings) acted reasonably in using deadly force against L'esperance.

In Karisman Taylor v. Todd Hudson and Gerald Hicks (misquoted and misrepresented in its context by Defendant Curnan), U.S. Dist. Court for the District of New Mexico (2003 U.S. Dist. LEXIS 26736), the court granted the officers' motion in limine in part and denied it in part. The granting in part was because "evidence of less intrusive alternatives by a police officer is irrelevant to the Fourth Amendment reasonableness inquiry and is thus inadmissible." However, the Court stated that **"Case law does not create a blanket prohibition against the admissibility of police**

**standard operating procedures in excessive force cases.** It does, however, demonstrate a very strong tendency to exclude such evidence on the basis of irrelevancy. This tendency stems from the primary focus of the Fourth Amendment inquiry: whether the officer acted reasonably under the circumstances. There may be situations in which admissibility would be appropriate." The court further opined, in separating a violation of the standard operating procedures from a constitutional violation, "These decisions do not unequivocally preclude the introduction of SOP (Standard Operating Procedure) evidence in excessive force cases, and a limiting instruction may be an adequate cure for the possible prejudice or confusion associated with these rules." Finally, the Court ordered "That the Defendants' Motion in Limine I: Exclusion of Evidence Regarding Police Standard Operating Procedures is granted in part and denied in part. Taylor will be allowed to introduce evidence of police standard operating procedures for the purpose of establishing whether Hudson was the initial aggressor in the altercation. Taylor will not be allowed, however, to argue or infer that the Defen-

dants' use of force was unreasonable or excessive because Hudson violated a standard operating procedure by failing to distance himself from Taylor. Taylor will not be allowed to introduce evidence of standard operating procedures related to less intrusive alternatives to the amount or type of force used in effecting the arrest. The Court reserves judgment on other SOPs to determine if they were designed or adopted for the benefit and protection of persons like Taylor and whether the probative value of such SOPs on excessive force outweighs possible jury confusion or undue prejudice to the Defendants."

It is unclear what Curnan means by "legally operative effect", as all statements herein are intended to have some level of legal effect before this Court. Plaintiff is not making a conclusory inference without stating the underlying facts on which the inference is based. The Kauai Police Department Standards of Conduct, General Orders, SHOPO contract, and failure to render aid are some of the underlying facts identified by Plaintiff in this case.

It was recognized in Hawthorne Partners v. AT&T Technologies, Inc., (831 F. Supp. 1398; 1993 U.S. Dist. LEXIS 12060), that "The trial court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings shall be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. Denial of a motion in limine does not necessarily mean that all evidence that is contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine."

See, also Huddleston v. United States, 485 U.S. 681 (1988), wherein Chief Justice Rehnquist writing the opinion for a unanimous Court stated, "We reject petitioner's position, for it is inconsistent with the structure of the Rules of Evidence and with the plain

language of Rule 404(b). Article IV of the Rules of Evidence deals with the relevancy of evidence. Rules 401 and 402 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable - is admissible unless the Rules provide otherwise. Rule 403 allows the trial judge to exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." Rules 404 through 412 address specific types of evidence that have generated problems. Generally, these latter Rules do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced. Rule 404(b), for example, protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character. The text contains no intimation, however, that any preliminary showing is necessary before such evidence may be introduced for a proper purpose. If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.

Curnan's proposed reading of Rule 404(b) as mandating a preliminary finding by the trial court that the act in question occurred not only superimposes a level of judicial oversight that is nowhere apparent from the language of that provision, but it is simply inconsistent with the legislative history behind Rule 404(b). The Advisory Committee specifically declined to offer any "mechanical solution" to the admission of evidence under 404(b). Advisory Committee's Notes on Fed. Rule Evid. 404(b), 28 U.S.C. App., p. 691. Rather, the Committee indicated that the trial court should assess such evidence under the usual rules for admissibility: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Ibid.; see also S. Rep. No. 93-1277, p. 25 (1974) ("[I]t is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e. prejudice, confusion or waste of time").

Petitioner's suggestion that a preliminary finding is necessary to protect the defendant from the potential for unfair prejudice is also belied by the Reports of the House of Representatives and the Senate. The House made clear that the version of Rule 404(b) which became law was intended to "plac[e] greater emphasis on admissibility than did the final Court version." H. R. Rep. No. 93-650, p. 7 (1973). The Senate echoed this theme: "[T]he use of the discretionary word `may' with respect to the admissibility of evidence of crimes, wrongs, or other acts is not intended to confer any arbitrary discretion on the trial judge." S. Rep. No. 93-1277, supra, at 24. Thus, Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence [485 U.S. 681, 689] as it was with ensuring that restrictions would not be placed on the admission of such evidence."

Chief Justice Rehnquist further stated "We emphasize that in assessing the sufficiency of the evidence under Rule 104(b), the trial court must consider all [485 U.S. 681, 691] evidence presented to the jury. "[I]ndividual pieces of evidence, insufficient in them-

selves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." Bourjaily v. United States, 483 U.S. 171, 179 -180 (1987).

In assessing whether the evidence was sufficient to support a finding that the televisions were stolen, the court here was required to consider not only the direct evidence on that point - the low price of the televisions, the large quantity offered for sale, and petitioner's inability to produce a bill of sale - but also the evidence concerning petitioner's involvement in the sales of other stolen merchandise obtained from Wesby, such as the Memorex tapes and the Amana appliances. Given this evidence, the jury reasonably could have concluded that the televisions were stolen, and the trial court therefore properly allowed the evidence to go to the jury.

We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b). See Michelson v. United States, 35 U.S. 469, 475 -476 (1948). We think, however, that the protection against such unfair prejudice emanates not from a re-

quirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 - as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed. Rule Evid. 404(b), 28 U.S.C. App., p. 691; S. Rep. No. 93-1277, at 25; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to [485 U.S. 681, 692] be considered only for the proper purpose for which it was admitted. See <u>United States v. Ingraham</u>, 832 F.2d 229, 235 (CA1 1987)."

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests this court to deny Defendant Curnan's Motion in Limine to exclude reference to Standard of Conduct, Police Department, County of Kauai.

DATED: Honolulu, Hawaii, February 21, 2006.

MARK R. ZENGER
DONNA E. RICHARDS
Attorneys for Plaintiff
MARK N. BEGLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK N. BEGLEY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT; GEORGE FREITAS; MARTIN W. CURNAN; and DAVID NAWAI;<br><br>Defendants. | CIVIL NO. CV 03-00162 KSC<br><br>**CERTIFICATE OF SERVICE** |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the within will be duly served on the following in the manner described below:

| | Mailed | Delivered |
|---|---|---|
| MICHAEL J. McGUIGAN, ESQ.<br>ELMIRA K. L. TSANG, ESQ.<br>Reinwald O'Connor & Playdon<br>Pacific Guardian Center<br>Makai Tower, Suite 2400<br>733 Bishop Street<br>Honolulu, Hawaii 96813<br><br>Attorneys for Defendant<br>MARTIN W. CURNAN | (X) | |

| | **Mailed** | **Delivered** |
|---|---|---|
| DAVID NAWAI<br>2931 Kalena Street, No. 2<br>Lihue, Hawaii 96766<br><br>Pro Se Defendant | (X) | |

DATED: Honolulu, Hawaii, February 21, 2006.

MARK R. ZENGER
DONNA E. RICHARDS
CHRISTOPHER S. BOUSLOG
Attorneys for Plaintiff
MARK N. BEGLEY