IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK N. BEGLEY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT, GEORGE FREITAS, MARTIN W. CURNAN, and DAVID NAWAI,<br><br>Defendants. | ) | CIVIL NO. 03-00162 KSC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case arises out of an alleged assault occurring on May 17, 2002, in Lihue, Kauai. On April 8, 2003, Plaintiff Mark N. Begley ("Plaintiff") filed a Complaint against Defendants County of Kauai ("Defendant County"), George Freitas ("Defendant Freitas"), Martin W. Curnan ("Defendant Curnan"), and David Nawai ("Defendant Nawai") alleging civil rights violations, assault, battery, false imprisonment,

intentional and negligent infliction of emotional distress, conspiracy, and failure to render aid.

On July 26, 2005, the Court issued an order granting in part and denying in part Defendant Curnan's motion for summary judgment. Following that order, the claims remaining against Defendant Curnan were conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress.

On October 4, 2005, the Court issued an order granting Defendant Freitas and Defendant County's motion for summary judgment, thereby dismissing these Defendants from the lawsuit.

This matter came on for bench trial on March 7 and 8, 2006. On March 9, 2006, the Court granted Defendant Curnan's motion for involuntary dismissal in part pursuant to Federal Rule of Civil Procedure 41(b), and dismissed the claims of conspiracy and intentional infliction of emotional distress against Defendant Curnan. The Court also granted Defendant Nawai's motion for involuntary dismissal in part, and dismissed

the claims of conspiracy, intentional infliction of emotional distress, violations of 42 U.S.C. §1983, and false imprisonment against Defendant Nawai.

The Court having examined the evidence admitted at trial, and having considered the written submissions and the record and file herein, pursuant to Rules 52 and 73 of the Federal Rules of Civil Procedure makes the following Findings of Fact and Conclusions of Law and FINDS in favor of Defendants Curnan and Nawai.

Findings of Fact

1. Sometime in the afternoon on May 17, 2002, Plaintiff, a Sergeant with the Kauai Police Department ("KPD") and Defendant Curnan, a Lieutenant with the KPD, spoke on the phone and agreed to a social meeting.

2. Plaintiff and Defendant Curnan met in 1989 when Plaintiff joined the KPD and became social acquaintances. During 2000-2002, Plaintiff and Defendant Curnan worked together at the Hanalei District of Kauai.

3. Defendant Curnan testified that in the afternoon of May 17, 2002, he drove Plaintiff to a job

site located in a sugar cane field outside of Lihue, referred to as “the mud pond.” The job site was run by Defendant Curnan’s cousin, Ricky Waalani, Sr..

4. While at the job site, Plaintiff and Defendant Curnan were joined by several others, including Defendant Nawai, Buddy Wilson, Michael Gordon, Ricky Waalani, Jr. and Ryan Waalani. They were all drinking beer and talking with one another. Buddy Wilson testified that he drank 8 to 10 beers while at the mud pond. Defendant Curnan testified that he drank 5 to 8 beers at the mud pond and that Plaintiff drank around the same amount.

5. Plaintiff met Defendant Nawai approximately 10 years ago when they were teammates on a local football team, the Enforcers.

6. Plaintiff testified that he did not want to go to the job site on May 17, 2002 because he did not feel comfortable around the Waalanis and he suspected that they were involved in criminal activities. Plaintiff also testified that he feared for his safety when he was around the Waalanis.

7. While their versions of the story differ slightly, Defendants Curnan and Nawai and Plaintiff all testified that they left the mud pond close to sunset and went to Keoki's, a local establishment in Poipu, to listen to live music. At Keoki's, Defendants Curnan and Nawai and Plaintiff drank beer. Plaintiff testified that he did not remember drinking beer at Keoki's, but stated that he would not argue if someone said that he drank beer there. Defendant Curnan testified that he and Plaintiff bought each other a beer at Keoki's. Buddy Wilson also testified that Plaintiff was drinking at Keoki's.

8. After the musicians stopped playing at Keoki's, Plaintiff, Defendants Curnan and Nawai, and Buddy Wilson went to a private party at the Koloa Mill ("the Mill"), to which they were not invited. Koloa Mill is situated on land owned by Grove Farm Co..

9. The Court finds Defendants Curnan and Nawai to be credible witnesses. The uncontroverted evidence establishes that Defendants Curnan and Nawai,

Plaintiff, and others were drinking beer together at the mud pond from the afternoon until dusk, that Defendants Curnan and Nawai, Plaintiff, and Buddy Wilson went to Keoki’s and eventually went to the Mill together in the hours preceding Plaintiff’s alleged assault. Plaintiff admitted that he drank beer beginning in the afternoon and into the evening. After leaving the mud pond, Plaintiff drove himself to Buddy Wilson’s house before going to Keoki’s in a vehicle driven by Buddy Wilson. The Court finds that despite Plaintiff’s testimony to the contrary, the evidence proves clearly that Plaintiff was a voluntary participant in the evening’s activities.

10. Defendants Curnan and Nawai and Buddy Wilson testified that at some point after they arrived at the Koloa Mill party, Defendant Nawai and Plaintiff began arguing about their presence at the Mill and whether Ricky Waalani, Sr. should be called. Ricky Waalani, Sr. is Defendant Nawai’s uncle and was employed by Grove Farm Co., the landowner of the Koloa

Mill. As its Chief of Security, Defendant Nawai thought Ricky Waalani, Sr. should be called and Plaintiff disagreed.

11. The argument continued unabated while the parties drove to Buddy Wilson's home in Lihue, where Plaintiff's truck and Defendant Nawai's truck were parked. Plaintiff and Defendant Nawai swore at each other and threatened to break each other's "ass." Plaintiff told Defendant Nawai that they should go to the Dairy Queen and "settle this man to man." Defendant Curnan and Buddy Wilson told Defendant Nawai and Plaintiff repeatedly to "shut up" and stop arguing. Buddy Wilson slammed on the brakes to get Plaintiff and Defendant Nawai's attention. However, Plaintiff and Defendant Nawai refused to listen and continued to argue.

12. Buddy Wilson testified that they arrived at his house around 11:00 p.m. Defendant Curnan and Buddy Wilson testified that they again tried to stop the argument between Defendant Nawai and Plaintiff.

Eventually, Buddy Wilson told Defendant Nawai and Plaintiff to quiet down and leave.

13. The Court finds Buddy Wilson to be a credible and disinterested witness. The evidence establishes that Defendant Curnan and Buddy Wilson repeatedly attempted to stop the heated argument between Plaintiff and Defendant Nawai and to dissuade Plaintiff and Defendant Nawai from having a confrontation.

14. Defendants Curnan and Nawai testified that Plaintiff insisted that Defendant Nawai meet him at the Dairy Queen parking lot to settle their disagreement.

15. Defendants Curnan and Nawai testified that Plaintiff left Buddy Wilson’s house first and drove to the Dairy Queen parking lot. Importantly, Plaintiff did not drive himself home.

16. Defendants Curnan and Nawai testified that they rode together to the Dairy Queen parking lot. During the ride to Dairy Queen, Defendant Curnan

attempted to calm Defendant Nawai. Defendant Nawai listened and heeded Defendant Curnan’s advice.

17. Defendants Curnan and Nawai testified that Plaintiff arrived at the Dairy Queen parking lot first. He exited his vehicle and began walking towards Defendant Nawai’s truck after they arrived.

18. Defendant Nawai testified that he exited his vehicle and walked towards the approaching Plaintiff. Significantly, as Defendant Nawai got closer to Plaintiff, he told Plaintiff “we don’t have to do this.”

19. Defendant Nawai testified that Plaintiff said nothing, kept coming, swung at him with a closed fist and missed, and then immediately swung at him a second time striking his shoulder.

20. In response, Defendant Nawai testified that he hit Plaintiff in the jaw with a single punch.

21. Defendant Nawai testified that after Plaintiff was struck, he crumpled, fell back, and struck his head on the pavement. Defendant Nawai was

able to grab Plaintiff’s shirt, but was unable to keep Plaintiff from going to the pavement. Defendant Nawai testified that he heard a dull thud when Plaintiff hit his head on the pavement.

22. Defendant Curnan testified that he saw Plaintiff swing at Defendant Nawai and miss. Defendant Curnan saw Defendant Nawai hit Plaintiff in the jaw with one punch. Defendant Curnan exited the vehicle and went over to Plaintiff and Defendant Nawai. By the time he got to them, Defendant Nawai was holding onto Plaintiff’s shirt and Plaintiff was on his knees and making a “snoring” sound.

23. Defendants Nawai and Curnan testified that after Plaintiff went down, they tried to help him up. Plaintiff had been knocked out and could not walk or stand without assistance. He was mumbling and used some profanity.

24. Defendants Nawai and Curnan testified that as they lifted Plaintiff to place him in Plaintiff’s truck, Plaintiff’s head accidentally hit the door frame

that separates the front of the cab area from the back of the truck.

25. Plaintiff testified that since this incident, he has suffered memory loss and has been unable to recall many of the details of the evening of May 17, 2002, particularly what occurred at the Dairy Queen parking lot. Important parts of his testimony is contradicted by the testimony of Defendants Curnan and Nawai and disinterested witness Buddy Wilson. For these reasons among others, the Court finds the testimony of Defendants Curnan and Nawai and Buddy Wilson to be more credible than Plaintiff's testimony, especially with regard to the circumstances of the alleged assault.

26. The credible evidence establishes that Defendant Curnan and Buddy Wilson attempted to defuse the situation between Plaintiff and Defendant Nawai. Plaintiff, Defendants Nawai and Curnan, and Buddy Wilson had been drinking beer during the hours preceding the incident at the Dairy Queen parking lot.

Plaintiff and Defendant Nawai were involved in a heated argument. Plaintiff challenged Defendant Nawai to go the Dairy Queen to settle things “man to man.” Plaintiff drove himself to the Dairy Queen parking lot expecting a confrontation. At the Dairy Queen parking lot, Plaintiff ignored Defendant Nawai’s comment, swung twice at Defendant Nawai without warning, hitting Defendant Nawai once in the shoulder. In response, Defendant Nawai struck Plaintiff once. As a result, Plaintiff went to the ground and his head contacted the pavement.

27. Defendants Curnan and Nawai testified that they agreed that Defendant Curnan would drive Plaintiff’s truck with Plaintiff in it and that Defendant Nawai would follow Defendant Curnan in his truck.

28. Defendant Curnan testified that on the way to Plaintiff’s home, Plaintiff drifted in and out of consciousness.

29. Plaintiff and his wife, Nadine Begley, testified that on May 17, 2002, they lived with their three children in Kapaa, Hawaii.

30. Defendant Curnan and Nadine Begley testified that Plaintiff soiled himself at some point before entering Plaintiff’s home.

31. Defendants Curnan and Nawai testified that they did not take Plaintiff to the Wilcox Hospital Emergency Room because they did not believe his injury or condition was serious. Defendant Curnan observed a small abrasion on Plaintiff’s head. There was no blood flow or other indication of injury.

32. Nadine Begley testified that shortly after 1:00 a.m., Defendants Curnan and Nawai took Plaintiff out of the truck and brought him into the house. Plaintiff was semi-conscious at the time.

33. Nadine Begley testified that she noticed a small coin-shaped spot of blood on her husband’s head.

34. Defendants Curnan and Nawai testified that they told Nadine Begley that Plaintiff had become

intoxicated, passed out and fell down. Defendants Curnan and Nawai testified that they did not tell Nadine Begley the truth about how Plaintiff was injured because they believed that Plaintiff would be embarrassed if Nadine Begley or other persons found out that her husband had started a fight and that Defendant Nawai had knocked Plaintiff out with one punch. In addition, they did not believe his injury or condition was serious.

35. Defendants Curnan and Nawai and Nadine Begley testified that they washed Plaintiff and placed him on a futon mattress to sleep.

36. Nadine Begley testified that she watched her husband carefully that night.

37. Nadine Begley testified that she did not take Plaintiff to the hospital or seek medical assistance for Plaintiff that night because Defendant Curnan and Defendant Nawai told her that Plaintiff had gotten intoxicated and that all he needed was sleep. Buddy Wilson went to Plaintiff’s house the day after

the incident and told Nadine Begley that Plaintiff needed to sleep it off.

38. Nadine Begley testified that she waited three days to take Plaintiff to the hospital because Plaintiff insisted that he did not want to go to the hospital and she could not move him by herself.

39. Nadine Begley testified that on May 21, 2002, Plaintiff’s superior, KPD Lieutenant Tanabe ordered her to take Plaintiff to the hospital, and she complied.

40. Nadine Begley testified that Plaintiff was immediately transported from Wilcox Hospital to Queen’s Hospital by medevac.

41. The Court finds Nadine Begley to be a credible witness. The credible evidence establishes that Defendants Nawai and Curnan brought Plaintiff home and assisted Nadine Begley in washing Plaintiff and helping him to bed. Nadine Begley observed Plaintiff for approximately three days before taking him to the hospital. Nadine Begley took her husband to the

hospital after being told to do so by her husband's superior officer. Neither Defendants Curnan and Nawai nor Nadine Begley knew that Plaintiff's injury or condition was serious.

42. Dr. Thomas Rogers, an expert neurosurgeon, testified that Plaintiff sustained a significant traumatic closed head injury with symptoms of brain damage as a result of this incident.

43. Plaintiff testified that since the incident on May 17, 2002, he has been on light duty at KPD, has suffered from sleeplessness and periodic headaches, and has a constant ringing in his left ear.

Conclusions of Law

1. The Court has jurisdiction over the subject matter and parties in this case.

2. The only claim remaining against Defendant Curnan is for negligent infliction of emotional distress. The only claims remaining against Defendant Nawai are failure to render aid, assault and battery, and negligent infliction of emotional distress.

3. In order to establish a claim based on negligent infliction of emotional distress, a plaintiff must establish the following:

(1) that defendant engaged in negligent conduct;

(2) that plaintiff suffered serious emotional distress;

(3) that defendant's negligent conduct was a legal cause of the serious emotional distress; and

(4) physical injury to either a person or property.

See Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1239 (D. Haw. 2001)(citations omitted).

4. To establish liability for negligence, Plaintiff must establish that Defendants Curnan and Nawai owed a duty of reasonable care to Plaintiff. Generally, the law does not require a person to render aid to another individual. However, one who undertakes gratuitously to render service to another which he should recognize as necessary for the protection of the third person may be subject to liability to the third person resulting from his failure to exercise reasonable care if:

(1) his failure to exercise reasonable care increases the risk of harm; or

(2) he has undertaken to perform a duty owed by the other to a third person; or

(3) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Doe v. Grosvenor Center Associates, 92 P.3d 1010, 1018 (Haw. App. 2004).

5. Plaintiff has failed to establish by a preponderance of evidence that either Defendant Curnan or Defendant Nawai owed Plaintiff a duty or obligation recognized by the law. The evidence establishes that neither Defendant Curnan, Defendant Nawai, nor Nadine Begley knew on May 17, 2002, that Plaintiff's injury or condition was serious and that he should be taken to a hospital or other facility for immediate medical care. Plaintiff has failed to establish by a preponderance of the evidence that Defendants Curnan or Nawai did not exercise reasonable care with regard to Plaintiff after the incident at the Dairy Queen parking lot.

Consequently, because Plaintiff has not met his burden of proof and has failed to establish an essential element of his claim for negligent infliction of emotional distress against Defendants Curnan and Nawai, this claim fails as a matter of law.

6. In Hawaii, there is no separate claim based on a defendant's alleged failure to render aid. Rather, the claim is treated as a negligence action based on a defendant's failure to render aid when a situation creating an affirmative duty to act arises.

7. The Court has concluded herein above that Defendant Nawai did not owe a duty to Plaintiff under the aforementioned circumstances. Consequently, Plaintiff's failure to render aid claim against Defendant Nawai necessarily fails as a matter of law.

8. In order to establish a claim for common law assault, a plaintiff must demonstrate the following:

(1) the defendant acted intending to cause a harmful or offensive contact with the person, or an imminent apprehension of such a contact, and

(2) the other person is thereby put in such imminent apprehension.

See Mukaida, 159 F. Supp. 2d at 1223; Restatement (Second) of Torts §21 (1965).

9. In order to succeed on a claim for common law battery, a plaintiff must establish the elements of assault and establish that the offensive contact actually occurred. See id.

10. When a defendant is acting in self-defense, a privilege arises and the defendant will not be held liable for assault or battery where the defendant reasonably believes that the use of force is necessary for the defense of himself and uses no more force than appears reasonably necessary under the circumstances. See United States v. Keiser, 57 F.3d 847, 851 (9th Cir. 1995).[1]

---

[1] The defense of self-defense is the same in civil and criminal cases with the exception of the burden of

11. Plaintiff has failed to establish by a preponderance of the evidence that Defendant Nawai acted intending to cause a harmful or offensive contact when he struck Plaintiff under the circumstances in this case. Additionally, Defendant Nawai has proven by a preponderance of the evidence that he struck Plaintiff in self-defense only after Plaintiff swung at him twice and hit him once in the shoulder area.

12. The evidence establishes that Plaintiff swung twice at Defendant Nawai and hit him once before Defendant Nawai struck Plaintiff. The Court finds that Defendant Nawai's use of force was equal to the amount of force used against him by Plaintiff and thus was reasonable under the circumstances. Consequently, Defendant Nawai is entitled to the privilege of self-defense and is not liable for assault or battery.

13. Pursuant to these Findings of Fact and Conclusions of Law stated herein, the Court hereby orders that judgment be entered in favor of Defendants

---

proof.

Curnan and Nawai and against Plaintiff as to all claims.

IT IS SO ORDERED

Dated: Honolulu, Hawaii, March 30, 2006

Kevin S.C. Chang
United States Magistrate Judge