# MEMORANDUM IN SUPPORT OF BEGLEY'S OBJECTION TO DEFENDANT CURNAN'S BILL OF COSTS

## I. INTRODUCTION

Defendant Martin W. Curnan ("Curnan" or "Lieutenant Curnan") states that as the prevailing party in this case, his attorney's costs should be granted as a matter of course under the Federal Rules of Civil Procedure 54(d)(1), and that there is no reason to deny Curnan's recovery of costs identified in his Bill of Costs.

Plaintiff Mark N. Begley ("Begley") believes that there is sufficient reason to deny Curnan's recovery of attorney's costs. Begley also believes that Curnan's Bill of Costs is not clearly explained; includes costs not listed under 28 U.S.C 1920, 28 U.S.C 1821, or Local Rule 54.2 as taxable; goes beyond the scope of his defense in District Court during this lawsuit, and is excessive.

## II. DISTRICT COURT HISTORY

On April 8, 2003 the attorneys for Plaintiff Mark N. Begley (" Begley"), filed a complaint on his behalf against Defendants County of Kauai ("County" or "County of Kauai"), Kauai Police Department ("KPD"), George Freitas ("Freitas" or "Chief Freitas"), Martin W. Curnan ("Curnan" or "Lieutenant Curnan"), and David Nawai ("Nawai").

On January 28, 2005 the District Court, Judge David A. Ezra, filed an order denying Motions for Dismissal and Summary Judgment by Defendants Curnan and Freitas.

On July 26, 2005 the District Court, Magistrate Judge Kevin S. Chang, issued an order granting in part and denying in part Defendant Curnan's renewed Motion for Summary Judgment.

On October 4, 2005 the District Court, Magistrate Judge Kevin S. Chang, issued an order granting Defendant Freitas' renewed Motion for Summary Judgment (and Defendant County of Kauai in joinder), dismissing those defendants from the lawsuit.

On November 11, 2005 Magistrate Judge Kevin S. Chang mediated a settlement conference between Begley and the various defendants.

On January 17, 2006 a status conference was held. Magistrate Judge Kevin S. Chang again mediated settlement discussion between Begley and the various defendants. No settlement was reached.

On February 10, 2006 Begley's attorney, Chris Bouslog, withdrew as co-counsel for Begley.

On March 7 and 8, 2006, the remaining claims against Curnan and Nawai came before the District Court for a bench trial.

On March 9, 2006, the District Court granted Curnan's motion for involuntary dismissal of the claims of conspiracy and intentional infliction of emotional distress. The court also granted defendant Nawai's motion for involuntary dismissal of the claims of conspiracy, intentional infliction of emotional distress, violations of 42 U.S.C 1983, and false imprisonment.

On April 6, 2006 the District Court entered judgment in favor of defendants Curnan and Nawai as to all remaining claims pursuant to "Findings of Fact and Conclusions of Law" filed on March 30, 2006.

On April 7, 2006 Begley filed a Notice of Appeal to the Ninth Circuit Court of Appeals regarding the District Court's various judgments in favor of the defendants.

On April 11, 2006 the District Court entered an amended judgment in favor of the various defendants pursuant to the District Court's prior granting of Summary Judgment in favor of the various defendants

On April 17, 2006 Begley filed his Designation of Record on Appeal.

On April 20, 2006 Defendant Freitas filed a motion for his attorney's fees and costs.

On April 25, 2006 Defendant Curnan filed a Bill of Costs and memorandum in support of Bill of Costs.

On April 26, 2006 Defendant County of Kauai filed a Bill of Costs and memorandum in support of Bill of Costs.

On May 11, 2006 attorneys Richards and Zenger withdrew as counsel for Begley. The District Court gave Begley until May 31, 2006 to file any objections to the defendants' Motion for Fees and Bills of Costs.

## III. ARGUMENT

Begley understands that Rule 54(d) creates a presumption in favor of awarding costs to a prevailing party. However, it also gives discretion to the District Court to refuse to do so. Berkla v. Corel Corp., 290 F.3d 983, 995 (9th Cir. 2002)

The losing party must show why costs should not be awarded. Stanley v. Univ. of Southern California 178 F.3d 1069, 1079 (9th Cir. 1999) Nat'l Info. Servs., Inc. v. TRW, Inc., 51 F.3d 1470, 1471-72 (9th Cir. 1995)

A District Court can "specify reasons" for its refusal to tax costs to the losing party. Assoc. of Mexican-American Educators v. California, 231 F.3d 572, 591 (9th Cir. 2000); Subscription Television, Inc. v. Southern Cal. Theatre Owners Ass'n, 576 F.2d 230, 234 (9th Cir. 1978)

In *Stanley*, the Ninth Circuit held that the district court abused its discretion in rejecting a losing civil rights plaintiff's motion to deny costs to the defendant

without considering: (1) the plaintiff's limited financial resources and (2) the chilling effect on future civil rights litigants of imposing high costs. *Stanley*, 178 F.3d at 1079.

The Ninth Circuit has so far approved several factors that would justify a district court's refusal to award costs to a prevailing party:

1. The losing party's limited financial resources. National Org. for Women v. Bank of Cal., 680 F.2d 1291, 1294 (9th Cir. 1982)

2. Misconduct on the part of the prevailing party. National Info. Servs., Inc. v. TRW, Inc., 51 F.3d at 1472 (9th Cir. 1995)

3. The importance of the issues. Assoc. of Mexican-American Educators v. California, 231 F.3d 572, 593 (9th Cir. 2000)

4. The importance and complexity of the issues,

5. The merit of the plaintiff's case, even if the plaintiff loses, and

6. The chilling effect on future Civil Rights litigants of imposing high costs. Stanley v. Univ. of Southern California, 178 F.3d at 1079 (9th Cir. 1999) Also see Save Our Valley v. Sound Transit (9th Cir. 2003).

**1. Begley has limited financial resources.**

Begley supports three (3) children who live at home, one of which is preparing for college. He pays a mortgage and several other loans. He is not an "organization". He continues to work for the Kauai Police Department, but his personal income and amount of overtime pay has been limited since the assault in May 2002. Begley still has medical expenses. He still suffers the effects of the

serious closed-head injury he received on May 17, 2002, and still takes prescription medication accordingly (Tramadol and Nortriptyline).

To pay a combined total of about $50,000 in attorney's fees and costs (based on the requests of Defendant's Curnan, Freitas and County of Kauai), would probably require the sale of Begley's house. Begley has already sought a home equity mortgage, and was denied. He has also inquired with the only listed bonding companies in Hawaii, neither of which offers an appeal bond. Begley is representing himself Pro Se before this court, and in his appeal to the Ninth Circuit Court of Appeals. Whatever monetary resources Begley has, or will have, Begley will need for his own representation. If Begley is forced to sell his house, or again seek a home-equity mortgage, the time involved (especially during the pendency of Begley's appeal) and any resulting loss or stress would probably be insurmountable.

To grant Curnan's request for attorney's costs would cause irreparable harm to Begley and his family. To deny Curnan's request for attorney's costs would NOT cause irreparable harm to Curnan, his attorney, or the County of Kauai. **All attorney's fees and costs for Curnan's defense were allocated by the Kauai County Council for payment by the County of Kauai.** Over $100,000 was appropriated by the County for this purpose.

The County of Kauai has its own full-time staff of County Attorneys, yet the County selected a large Honolulu-based attorney's firm to represent Defendant Curnan. Though the County has argued, through its hired attorneys, that Curnan was not on duty or acting under Color of Law at the time of the assault on Begley, the County has continued to pay for Curnan's representation throughout the Begley lawsuit, and even after the 1983 Color of Law claims against Curnan and the County were dismissed by the District Court.

**2. Defendant Curnan and/or his attorney have made significant misrepresentations to the District Court during the course of this case.**

In Curnan's Memorandum in Support of his Motion for Summary Judgment, filed October 25, 2004, (Page 3, paragraph 2) Curnan stated that in his "eye-witness account" of the events that occurred on the evening of May 17, 2002, "Plaintiff was drunk in the company of colleagues. Later in the evening, Curnan found Plaintiff incapacitated. It appeared Plaintiff had passed out due to excessive alcohol consumption. Immediately thereafter, Nawai and Curnan gave Plaintiff (Begley) a ride home". **Refer to Attachment "A".**

In Curnan's sworn testimony during the jury-waived trial on March 7, 2006, Curnan stated that "and all Dave (NAWAI) was saying that, you know, he not going to talk to me like this, you know, not that he was going to go over there and

broke anybody's ass. But I just stayed in the truck, thinking that, ah, these guys going to hash it out, whatever. Like I said before, sometimes you get people watching and get little bit more spunky, but maybe they're going to hash it out. Mark (Begley) got out of his truck, and about the same time Dave (Nawai) got out of his truck and Mark came walking towards David in front of the truck, then I saw him like he was going to take a round house swing at Dave. After he swang and he missed, Dave gave him one right to the jaw." CURNAN then states "and Mark was at his knees at the time, snoring, you know. He was knocked out." **Refer to Attachment "A".**

Both of the statements above are significantly different than the statement CURNAN made to Begley's wife on the night of Begley's assault. They are also different than statements made by CURNAN to KPD investigators, and Attorney General Investigators. Begley's training by the Federal Bureau of Investigation, in statement interpretation, reveals other deceptive elements in the statements of Martin W. Curnan, but Begley will not discuss them here.

Defendant Curnan, in his motion for Summary Judgment, dated May 18, 2005, also told the court that Begley "admitted" to drinking alcoholic beverages for a "9-hour period". **This was a lie**. Begley never "admitted" this, as this was not the case on the night Begley was assaulted. However, the District Court believed this

lie and even mentioned it as fact in the District Court's Order granting Summary Judgment in part to Defendant Curnan on July 26, 2005.

From the beginning of this case, Curnan and his attorneys have promulgated the lie that Begley was intoxicated on the night in question; thus Begley's alleged desire to be with Curnan's group, thus Begley's alleged irrational behavior, thus Begley's incoherent condition, thus Curnan's excuse for not seeking medical attention for Begley, and thus Curnan's lies to Begley's wife.

Curnan stated that he lied to Begley's wife because he didn't want Begley to feel "shame" for starting a fight and thus getting injured. Curnan would have us believe that Curnan thought it would cause Begley less "shame" if Begley's wife and others believed that Begley got so drunk that he fell and hit his head, couldn't walk or speak clearly, and shit his pants.

Begley has argued from the beginning of this action, and has proven, that he was not intoxicated on the night of his assault. He was 'milking" his beer early in the day, and did not continue drinking with the group all night. At the bench trial of March 7 and 8, 2006, two witnesses, Mahiai Naihe and Buddy Wilson, testified that Begley was not intoxicated that night, nor had Begley been drinking at all in the evening at Koloa Mill, or after. Nadine Begley testified, and had already declared, that she smelled no liquor on Begley or in Begley's bloody vomit on the night of Begley's injury.

**The County of Kauai has lied and made significant misrepresentations to the District Court** and the Plaintiff during the course of this case. Recovery of Curnan's' attorney's fees can only benefit the County of Kauai, since the County has covered all costs and fees for Curnan's defense from the County's budget. Therefore, the County's significant misconduct, detailed below, should also be considered here.

On January 24, 2005 there was a hearing before the District Court, Judge David A. Ezra ("Judge Ezra"), regarding Motions for Dismissal and Summary Judgment by Defendants Curnan and Freitas. During that hearing, the District Court gave Begley's attorneys a discovery extension because criminal investigations by the Kauai Police Department had not previously been completed. The criminal report of the assault on Begley was not yet available. At that time, Judge Ezra warned the County of Kauai to promptly produce documents. **See page 15 in Attachment "B"** (the Transcript of Proceedings before the Honorable David Alan Ezra, Chief United States District Judge, on January 24, 2005.) Attorney David Minkin ("Minkin" or "Mr. Minkin"), representing the County of Kauai, told the Honorable David Alan Ezra that he (Minkin) anticipated "being able to produce the County police reports early next week" (Transcript of Proceedings page 15 at line 23). **Mr. Minkin did not**. In fact, Mr. Minkin did not produce any of the County police reports until five months later, on June 21, 2005, after

renewed motions for summary judgment had been filed with Magistrate Judge Kevin S. Chang, and several weeks after Begley's attorneys had filed another request, and then a subpoena for the documents.

The fact is that THE COUNTY'S ATTORNEY, MR. MINKIN, HAD A COPY OF THE REPORT ON BEGLEY'S ASSAULT FROM JANUARY 18, 2005, PRIOR TO HIS HEARING BEFORE THE HONORABLE DAVID ALAN EZRA. MR. MINKIN LIED TO THE COURT, AND THEN WITHHELD PRODUCTION OF THE KPD DOCUMENTS FROM BEGLEY FOR ANOTHER 5 MONTHS. **Refer to Attachment "B".**

When the County of Kauai's production of documents, numbered C0001-C0440, was finally made to Begley's attorneys on June 21, 2005, only a very small portion of the documents that were requested (again on 05/24/05 and 06/01/05 respectively) were included. **Refer to Attachment "C".**

**3. The issues at hand are paramount.**

As of this writing, the Kauai Police Department has still not instituted an internal affairs unit, nor does it have any personnel permanently trained and assigned for that purpose. The County of Kauai continues to receive new claims and lawsuits against KPD and its Police Officers at an alarming pace.

Police Officers in small communities, such as Kauai, are well recognized by the public regardless of whether the officer is in uniform or not, and regardless of whether the officer is working his regular tour of duty or not. A Police officer and his Department should not find refuge from the "Color of Law" because they wait until they finish their regular shift to promulgate illegal activity, or because they don't flash their badge and gun before they ratify illegal and/or unconstitutional acts, furthering the policies and/or customs of their agency.

**4. The importance and complexity of the issues, and**

**5. The merit of Begley's case**

It is uncontroverted in Begley's case that Lieutenant Martin Curnan was the Vice Commander, and Acting Assistant Chief over the KPD Investigative Services Bureau, on May 17, 2002, the day of Begley's serious injury.

It is uncontroverted that Sergeant Mark Begley received a serious closed head injury, including brain damage and clinical evidence of a basilar skull fracture, while in the company of Curnan on the night of May 17, 2002. Begley still suffers from the results of those injuries today, and still uses prescription medication.

It is uncontroverted that Sergeant Mark Begley was a subordinate officer to Curnan that day, and had always been a subordinate officer to Curnan during the years prior.

It is uncontroverted that Lieutenant Curnan invited Begley to Curnan's KPD office during regular work hours that day of May 17, 2002. (Begley and Curnan disagree on who called who.) Begley met Curnan in front of Curnan's KPD office that day. Curnan was waiting in Curnan's KPD vice truck, at the KPD parking lot in front of Curnan's office, when Begley arrived.

It is uncontroverted that Lieutenant Curnan told Begley to get into his KPD truck, and then drove Begley to a cane field where Curnan's family members were working, and invited Begley to have a beer with Curnan. (Begley and Curnan disagree on the route that Curnan took to the cane field, and whether Curnan initially told Begley where they were going.)

It is uncontroverted that Lieutenant Curnan was at the same location as Begley throughout the remainder of the evening. It is uncontroverted that Lieutenant Curnan was with Begley in transport to every location that evening except for the short drive allegedly from Buddy Wilson's house to the Kauai Prosecutor's office parking lot behind the old Dairy Queen in Lihue. By Curnan's own admission, he and Defendant Nawai left Wilson's house together, shortly after Begley left, and they followed Begley to that location.

It is uncontroverted that some type of assault occurred that evening in the presence of Lieutenant Curnan, and that Begley, who was the only person injured, received a serious closed head injury.

It is uncontroverted that Lieutenant Curnan did not stop the assault, did nothing to report the assault, did not seek medical attention for Begley, and then lied to Begley's wife regarding the cause of Begley's injury and condition.

**A special relationship existed** between the acting Assistant Chief of Police, Lieutenant Curnan, and Begley. Begley was Curnan's subordinate and had followed Curnan's orders, directions, and requests for years. However, Begley had also questioned Curnan regarding the alleged criminal activity of Curnan's friends and family members. On the day of Begley's serious injury, Begley once again warned Curnan to curtail Curnan's association and protection of some of these people. Curnan testified (at the bench trial on March 7, 2006) that just prior to Begley's serious injury that night Curnan told Buddy Wilson that **Curnan would take care of Begley**. Curnan also testified that before Curnan drove with Nawai to Begley's location at the prosecutor's office parking lot, **Curnan knew** there might be an affray between Nawai and Begley. **Refer to Attachment "A" for Curnan's statements**. When Curnan drove the seriously-injured Begley home, he lied to Begley's wife regarding the causation of Begley's injuries, discouraging her from

seeking medical attention for Begley. Several months later, when Begley finally returned to KPD on light duty status, Lieutenant Curnan visited Begley during work hours in the office where Begley was working, and **told Begley to back him (Curnan) up.**

**A special relationship existed** between the Acting Assistant Chief of Police, Lieutenant Curnan, and the Chief of Police, Defendant George Freitas. Prior to the assault on Begley, Curnan claimed that Curnan and Chief Freitas were "in the same boat". Chief Freitas had not taken any action on prior reports of wrongdoing by Curnan. After the assault on Begley, and before Begley's return to KPD on light duty status, Chief Freitas told Begley that Curnan was a nice guy and Begley should think the same way. Chief Freitas did not immediately investigate the assault on Begley, and never conducted an internal investigation into the activities of Curnan that night. During the tardy KPD criminal investigation, KPD investigators told Begley that they only had one suspect, David Nawai (who KPD eventually arrested for Assault 1st degree). Curnan was never treated as a suspect, or even as an accessory to the assault. Among other adverse and retaliatory acts, Chief Freitas threatened to fire Begley if Begley had a permanent injury and Begley did not obtain clearance for full duty status. Freitas questioned Begley, and then inquired with other KPD staff whether Begley was going to file a lawsuit. Freitas warned Begley not to talk to the press about what happened to Begley the

night Begley was injured. All of these acts were done during regular work hours and while Freitas was the Chief of Police for KPD.

"A conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement." Ward v. Equal Employment Opportunity Comm'n, 719 F.2d 311, 314 (9th Cir. 1983)

A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from the defendant's actions. "Acts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir. 1987) and United States v. Batimana, 623 F.2d at 1368 (9th Cir. 1980)

In Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978), the Ninth Circuit held that "***personal participation is not the only predicate for section 1983 liability.***" Gilbrook v. City of Westminster (9th Cir. 1999) Emphasis added.

Begley believes that the purpose of the serious assault on Begley, the so-far successful attempt to cover it up, and the retaliatory acts against Begley, were for the purpose of quieting Begley. By acts of commission and omission, the Acting

Assistant Chief, Lieutenant Martin Curnan, and Chief Freitas certainly did their part to contribute to this purpose.

Even viewing all of Defendant Curnan's contradictory admissions in the light most favorable to Defendant Curnan, there is still indication that he was part of the conspiracy. See United Steelworkers, 865 F.2d at 1541 "Evidence that police failed to exercise independent judgment will support an inference of conspiracy with a private party." Gilbrook v. City of Westminster (9th Cir. 1999)

**During a settlement conference on November 22, 2005**, Begley and his former attorney, Chris Bouslog, were present in the chambers of Magistrate Kevin S. Chang ("Magistrate" or "Magistrate Chang"). The Magistrate mentioned to Begley that Magistrate Chang's parents lived on the west side of Kauai. The Magistrate's parents had mentioned to him that people on Kauai tend to look out for each other. The Magistrate verbally recognized Begley's role as an instructor for the Kauai Police Department and Begley's knowledge of KPD standards of conduct. Magistrate Chang also stated that he (the Magistrate) would like to get some money for Begley, but the County of Kauai was saying that they had no money. Magistrate Chang offered to work with Begley and the County of Kauai to negotiate an acceptable settlement. The Magistrate suggested a County of Kauai commitment to the formation of an internal affairs unit for KPD as the terms for

Begley's settlement. This interaction and comments by Magistrate Chang did not indicate that the Magistrate believed Begley's claims were without merit.

**6. The chilling effect on future Civil Rights litigants of imposing high costs.**

The defendants in this case are requesting a total of about $50,000 in attorney's fees and costs. Curnan's Bill of Costs alone is about $7,000. $7,000 is almost 2 months of pay at Begley's current salary as a Police Sergeant. This would have a significant and irreparable impact on Begley and his family, but it would have an even more chilling effect on many other Kauai residents who are paid less, and find themselves interacting with Kauai Police Officers on a daily basis (especially considering the very high cost of living in Hawaii, and the high cost of housing on Kauai.)

**<u>CURNAN'S BILL OF COSTS</u>**

28 U.S.C. 1920, 28 U.S.C. 1821, and Local Rule 54.2 describe what may be claimed in the taxation of attorney's costs. The party seeking costs carries the burden of establishing the amount of compensable costs and expenses to which it is entitled. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248, 1249 (10th Cir. 2002) The awarding of costs also turned on whether or not the costs were for materials necessarily obtained for use in the case.

Many of the items, generally listed in Defendant Curnan's attachment to his Bill of Costs, do not fall within the items described as taxable under 28 U.S.C. 1920, 28 U.S.C. 1821, and Local Rule 54.2. Almost all of the items Curnan listed do not show their applicability to the Begley lawsuit. Other billings seem excessive and/or unjustified.

Under "Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case", Defendant Curnan's attorney, Michael McGuigan ("McGuigan"), claims **$3935.22** in taxable costs. In Curnan's attachment to the Bill of Costs, reference number 1490, dated March 9, 2006, McGuigan lists **$1727.91** for court reporter Debra Chun's trial transcripts from March 7-9, 2006. The attachment to Curnan's bill of costs shows no justification for these transcripts. Furthermore, Begley ordered and obtained these same transcripts for $325.95. **Refer to Attachment "D".**

In Curnan's attachment, billing reference # 1044 dated November 4, 2005, shows expedited billing of **$646.72** for the transcript of Mark Begley's deposition. No reason is apparent or given for the expedited handling. **Refer to Attachment "E"** for Curnan's attachment to his Bill of Costs.

Billing reference # 777, on 06/28/05, is **$287.72** for the deposition transcripts of Dwight Nadamoto from the State Attorney General's office. The

County of Kauai's attachment to its Bill of Costs, billing reference #288, on 06/23/05, **also lists this same expense.**

In Curnan's attachment, there are 164 billing references for "**Lexis-Nex**" totaling **$4,183.14**. No clear description is given, let alone a specific description of what these items were and for what purpose they were used. If "Lexis-Nex" is a reference to Lexis Nexis, then these billings are not taxable costs under 28 U.S.C. 1920, 28 U.S.C 1821 or Local Rule 54.2. Reference # 274 on 04/05/04 is a billing of **$35** for "Various pleadings" from the "National Archives". Local Rule 54.2 (f)(5) states that "Electronic or computer research costs are **NOT taxable**". Emphasis added.

In Curnan's attachment to his Bill of Costs, reference number 1387 and 1405, dated March 7, 2006 and March 8, 2006, there are billings for a total of **$167.96** for two (2) "trial luncheon meeting(s)". Trial luncheons are not a taxable cost under 28 U.S.C. 1920 or Local Rule 54.2. The Local Rule 54.2 (f)(3) allows per diem, subsistence, and mileage payments for witnesses, NOT for counsel or the defendant and the defendants' family.

Reference numbers 978 and 992-994, dated October 20-27, 2005, list a total of **$560.30** in travel expenses for Defendants Curnan and Nawai. Reference numbers 569, 1017, and 1414-1416 list a total of **$99** in parking expenses for

Defendant Curnan. These are not taxable costs under 28 U.S.C. 1920 or Local Rule 54.2.

Local Rule 54.2 (f)(4) gives specific guidelines for the justification of the cost of copies. Though Curnan has submitted an affidavit with a general statement that his costs are justified, the attached billing record gives no specific description of each of the many items copied or their intended purpose. Without specific justification for each item, it is impossible to say that copies were not made simply for convenience of Curnan and other interested parties, or that the various copies were even applicable to the Begley case.

For example, reference # 1443 in Curnan's attachment to his Bill of Costs is for "99 pages" **on 03/20/06** at a cost of **$9.90**. Like the majority of other copies, no description is given of what was copied or for what purpose. Reference numbers 1479-1489 total **$28.54** in **April 2006** for copies and postage. This was the month after bench trial, and after the District Court had filed its findings of fact and conclusions of law. There is no perceivable justification for these billings.

The vast majority of other billed items in Curnan's attachment (postage, faxes, phone calls, etc) also do not give any explanation of purpose or applicability in the Begley case as a taxable cost under 28 U.S.C. 1920. Those that give any description do not appear to be taxable, such as reference # 1465 **on 03/11/06**, a billing of **$11.78** for DHL Express delivery **to David Nawai** in Lihue.

Curnan's attorney, Michael McGuigan, states in his affidavit that his costs "appear to be allowable by law" (McGuigan's affidavit at ¶6). However, the majority of his costs are clearly not allowable by law. His entire Bill of Costs should be held in question, and not granted.

## IV. CONCLUSION

For the reasons stated above, Begley asks the District Court to deny Defendant Martin W. Curnan's entire Bill of Costs.

DATED: Kapaa, Kauai, Hawaii, May 30, 2006

MARK N. BEGLEY
5318 Makaloa Street
Kapaa, HI 96746

Pro Se Plaintiff