REINWALD O'CONNOR & PLAYDON LLP

A Limited Liability Law Partnership
MICHAEL J. McGUIGAN 2433-0
ELMIRA K.L. TSANG 7474-0
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2400
Honolulu, Hawai`i 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
E-mail: mjm@roplaw.com

*Attorneys for Defendants*
*MARTIN W. CURNAN*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 2 5 2004

at 12 o'clock and 15 min. ___M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| MARK N. BEGLEY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT, GEORGE FREITAS, MARTIN W. CURNAN, and DAVID NAWAI,<br><br>Defendants. | CIVIL NO. CV03-00162 DAE KSC<br><br>NOTICE OF MOTION; DEFENDANT MARTIN W. CURNAN'S MOTION TO DISMISS PLAINTIFF MARK N. BEGLEY'S FIRST AMENDED COMPLAINT FILED MARCH 5, 2004 OR FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF MICHAEL J. McGUIGAN; EXHIBITS "A" – "B"; CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5; CERTIFICATE OF SERVICE<br><br>Date: JANUARY 24, 2005<br>Time: 9:00 a.m.<br>Judge: Honorable David Alan Ezra<br><br>Trial Date: MARCH 1, 2005 |

150061/EKT

EXHIBIT "A"

The fact of the matter is that Plaintiff does not remember anything that transpired after he left the cane-field, including the events which led to his injuries and loss of consciousness. Plaintiff's lack of personal knowledge becomes apparent when he admits to speculating about facts alleged in the First Amended Complaint. Plaintiff confesses he "learn[ed] more about [the private party] after [his] assault. [He does] not remember actually being at that party." Id. at p. 8. When asked to identify the source of allegations in the First Amended Complaint, Plaintiff responded "I asked Curnan about what happened." Id. at p. 11.

CURNAN's eye-witness account of the events at issue remains uncontested. On the evening of May 17, 2002, Plaintiff was drunk in the company of colleagues. Latter in the evening, CURNAN found Plaintiff incapacitated. It appeared Plaintiff had passed out due to excessive alcohol consumption. Immediately thereafter, NAWAI and CURNAN gave Plaintiff a ride home. Upon arrival, CURNAN helped Ms. BEGLEY carry Plaintiff into his bathroom. Contrary to Plaintiff's unsubstantiated allegations, at no time did CURNAN assault Plaintiff.

Plaintiff now brings suit against NAWAI, CURNAN, George Freitas ("FREITAS") and the County of Kauai, alleging in part that CURNAN (1) assaulted Plaintiff, (2) falsely imprisoned Plaintiff by denying Plaintiff medical

of that right were dimly perceived, if perceived at all. Martinez, 54 F.3d at 989. It follows that CURNAN is entitled to immunity from suit.

## IV. CONCLUSION

Based on the allegations in Plaintiff's First Amended Complaint and Plaintiff's Answers to Requests for Interrogatories to Mark N. Begley Dated June 16, 2004, Martin W. Curnan respectfully requests that the Court order dismissal of said Complaint with respect to all claims and/or causes of action alleged against CURNAN, or in the alternative, grant summary judgment as to all claims and/or causes of action in his favor and against Plaintiff.

DATED: Honolulu, Hawai`i, OCT 25 2004.

MICHAEL J. McGUIGAN
ELMIRA K.L. TSANG

*Attorneys for Defendant*
*MARTIN W. CURNAN*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK N. BEGLEY, Plaintiff, vs. COUNTY OF KAUAI, et al., Defendants. | CV 03-00162 KSC<br>Honolulu, Hawaii<br>March 7, 2006<br>8:30 A.M. |

TRANSCRIPT OF NON-JURY TRIAL
BEFORE THE HONORABLE KEVIN S. C. CHANG
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | MARK R. ZENGER<br>Richards & Zenger<br>P. O. Box 3966<br>Lihue, HI 96766 |
| For the Defendant Martin W. Curnan: | MICHAEL J. McGUIGAN<br>Reinwald O'Connor & Playdon<br>Pacific Guardian Ctr.<br>Makai Twr.<br>733 Bishop St., Fl. 24<br>Honolulu, HI 96813 |
| Defendant Pro Se: | DAVID NAWAI<br>P. O. Box 1769<br>Lihue, HI 96766 |
| Official Court Reporter: | Debra Kekuna Chun, RPR, CRR<br>United States District Court<br>300 Ala Moana Blvd. Ste. C285<br>Honolulu, HI 96850<br>(808) 534-0667 |

Proceedings recorded by machine shorthand, transcript produced with computer-aided transcription (CAT).

**INDEX**

**EXAMINATION**


| **Witness Name** | **Page** |
|---|---|
| Mark Begley | |
| Direct By Mr. Zenger | 5 |
| Cross By Mr. McGuigan | 63 |
| Cross By Mr. Nawai | 82 |
| Re-Direct By Mr. Zenger | 86 |
| Re-Cross By Mr. McGuigan | 87 |
| Re-Direct By Mr. Zenger | 88 |
| D. Thomas Rogers, M.D. | |
| Direct By Mr. Zenger | 92 |
| Voir Dire By Mr. McGuigan | 99 |
| Direct By Mr. Zenger | 103 |
| Martin W. Curnan | |
| Direct By Mr. Zenger | 115 |
| Cross By Mr. McGuigan | 160 |
| Mahiai Naihe | |
| Direct By Mr. Zenger | 192 |
| Cross By Mr. McGuigan | 198 |
| Re-Direct By Mr. Zenger | 200 |
| David Nawai | |
| Direct By Mr. Zenger | 201 |

(Witness excused.)

THE COURT: Mr. Zenger.

MR. ZENGER: Yes, Your Honor. We would call Martin Curnan to the stand.

THE CLERK: Please raise your right hand.

(Witness sworn.)

THE CLERK: Please have a seat and state your name and spell your last name for the record.

THE WITNESS: My name is Martin William Curnan, C-u-r-n-a-n.

DIRECT EXAMINATION

BY MR. ZENGER:

Q Mr. Curnan, are you retired from the police force now?

A That is correct.

Q And when did you retire?

A Two years ago, November 1st.

Q And you have a recollection of the events of May 17, 2002?

A That's correct.

Q You have a recollection of taking Sergeant Begley home from Lihu'e to Kapa'a?

A That is correct.

Q Did you arrive at -- did you bring Sergeant Begley -- arrive at his home on March -- excuse me. May 17th or

him behind Dairy Queen, which is again the old prosecutor's office, that parking area over there. He was persistent on that. They want to settle this man to man.

Mark was telling me to jump in with him, you know, let's go over there. And I just happened to be by Dave's truck at the time. Mark took off. And shortly thereafter -- I don't know how long it was after that -- we went -- we drove over there.

Q How long does it take to get from Buddy Wilson's house to the Dairy Queen or the old prosecutor's --

A One minute. One minute.

Q Did you think that the Mark Begley and David Nawai were going to engage in a mutual affray at the Dairy Queen parking lot?

A I thought they might have, based on the way they were yapping to each other. But sometimes when they're by themselves, they talk it out or whatever, and then nothing would happen.

Q Why did you go?

A Dave was going to drive me home.

Q Mark Begley couldn't drive you home?

A He could have drove me home, but David had offered to drive me home. I would have went home with Mark. Either or.

Q Okay. What happened when you got to the Dairy

Queen/prosecutor's office parking lot?
A When we got behind there driving, Mark had already reversed his truck towards the backstop over there.
Q The ballfield.
A The backstop, yeah, the ballfield. And I was in the truck -- and Dave has a small truck -- the passenger side. And all Dave was saying that, you know, he not going to talk to me like this, you know, not that he was going to go over there and broke anybody's ass. But I just stayed in the truck, thinking that, ah, these guys going to hash it out, whatever. Like I said before, sometimes you get people watching and get little bit more spunky, but maybe they're going to hash it out.
Mark got out of his truck, and about the same time Dave got out of his truck and Mark came walking towards Dave in front of the truck, then I saw him like he was going to take a roundhouse swing at Dave. After he swang and he missed, Dave gave him one right to the jaw. That's when I kind of -- I just -- I got pissed off at that time and started getting out of his truck to see what the, you know, F is going on with these guys.
And Mark was at his knees at the time, snoring, you know. He was knocked out. And I was pretty upset, you know, at both these guys at that time, you know, swearing. And Mark was snoring.

A No.
Q You ever seen him fight ever before that night?
A No.
Q How about Mark Begley? Could he box; do you know?
A I heard testimony today that he's boxing. I didn't know that; that he boxes.
Q After you got out of the truck to go to Mark Begley your testimony is you found him snoring and David Nawai holding him by the shirt and Mark Begley's knees on the ground; is that correct?
A That's correct.
Q Was it snoring like you'd hear someone snoring when they sleep?
A Snoring when they sleep.
Q How many beers had you had by that time?
A Well, I think I testified to 12 earlier. Then a couple at Keoki's and one down at the mill.
Q How long were you folks at Buddy Wilson's house the second time before you went to the prosecutor's office?
A Couple of minutes.
Q Did you have a beer there?
A No.
Q Did you talk to Buddy Wilson while you were at Buddy Wilson's house before you left Buddy Wilson's house to go to the prosecutor's office?

A Yes, I did.
Q What did you say to him?
A Well, Buddy was kind of -- was disgusted with this whole situation the way it was going like I was. I told Buddy, "Don't worry about it. I'll take care of these guys," you know, meaning that I'll make sure that everything's okay. That's what I talked to Buddy about. And he said, "Okay."
Q Did you put your hand on Buddy's chest to stop him from going with you?
A No. Nobody is going to stop Buddy from going anyplace; you know that Mark.
Q Did you want him to go or not want him to go?
A He said he was going in the house and sleep, he was disgusted with it, and he didn't want anything to do with it. I told him, "Don't worry about it. I going take care of these guys."
Q Go back to the prosecutor's office now. Mark Begley is on his knees; he's snoring. David Nawai is holding him up by his shirt. What did you do next?
A Well, after ranting and raving a few minutes kind of pissed off about the situation, we got Mark up and to put him into his truck. He was in no condition to drive at that time because he was drinking and he just got knocked out from one punch; so he was in no condition to drive --

COURT REPORTER'S CERTIFICATE

I, Debra Kekuna Chun, Official Court Reporter, United States District Court, District of Hawaii, do hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATED at Honolulu, Hawaii, April 14, 2006.

/s/ Debra Chun

DEBRA KEKUNA CHUN

RPR, CRR

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

MARK N. BEGLEY, Plaintiff, vs. COUNTY OF KAUAI; KAUAI POLICE DEPARTMENT; GEORGE FREITAS; MARTIN W. CURNAN; and DAVID NAWAI; Defendants.

CIVIL NO. CV 03-00162 KSC

DEPOSITION OF ~~MARK~~ (MARTIN) CURNAN

Taken on behalf of the Plaintiff at the Law Offices of Chris Bouslog, Four Waterfront Plaza, Suite 480, 500 Ala Moana Boulevard, Honolulu, Hawaii, commencing at 9:04 a.m. on October 28, 2005, pursuant to the Federal Rules of Civil Procedure.

BEFORE: SHEILA BRITT LIPTON, CSR NO. 257
Notary Public, State of Hawaii

H O N O L U L U R E P O R T I N G S E R V I C E S
1000 Bishop Street, Suite 401
Honolulu, Hawaii 96813
(808) 524-6288





APPEARANCES:

For the Plaintiff: CHRISTOPHER S. BOUSLOG, ESQ.
Law Offices of Chris Bouslog
Four Waterfront Plaza
Suite 480
500 Ala Moana Boulevard
Honolulu, Hawaii 96813

For Defendant Martin W. Curnan: MICHAEL J. McGUIGAN, ESQ.
Reinwald O'Connor & Playdon
Pacific Guardian Center
2400 Makai Tower
733 Bishop Street
Honolulu, Hawaii 96813





I N D E X


| | Page |
|---|---|
| EXAMINATION BY: | |
| Mr. Bouslog | 4 |
| EXHIBITS MARKED FOR IDENTIFICATION: | |
| Exhibit A | 13 |






(Whereupon the disclosure was presented to counsel.)

MARTIN CURNAN,

called as a witness by and on behalf of the Plaintiff, having been first duly sworn, was examined and testified as follows:

EXAMINATION

09:04:54 BY MR. BOUSLOG:
09:04:54 Q. Would you state your full name, please.
09:04:56 A. **Martin William Curnan.**
09:04:58 Q. Have you ever provided testimony such as this
09:05:03 before a court reporter at a deposition?
09:05:05 A. **Yes, I did.**
09:05:06 Q. Basically I'm going to repeat some of the
09:05:11 instructions. And please bear with me because you
09:05:13 probably heard them before, and possibly from your own
09:05:16 attorney here today also.
09:05:18 If you don't understand a question, let me know.
09:05:20 I'll try to reword it. And even if it's a fairly simple
09:05:25 question and you may have been thinking about your prior
09:05:29 response or what the next question will be, it just went
09:05:33 over your head, don't feel embarrassed about asking me to
09:05:36 repeat a question.
09:05:38 Please wait for me to finish asking the question

Q. No.

A. **Oh, excuse me. I thought we were back at Isenberg again. From Koloa Mill we went to Lihue.**

Q. Where in Lihue did you go?

A. **To Buddy's house. Do you mind if we take a break?**

Q. Not at all.

MR. BOUSLOG: Off the record.

(Recess taken.)

MR. BOUSLOG: Back on the record.

Q. From the Koloa Mill location the group drove directly back to Buddy Wilson's home?

A. **Yes.**

Q. And where were you seated?

A. **I was in the front passenger seat.**

Q. Where was Mark?

A. **I believe he was behind the driver. And David was behind me. That's my educated guess at this time. But if you refer to my other statement it would probably be correct.**

Q. It was during this drive that Mark was being belligerent towards David?

A. **Yes.**

Q. Do you know whether the belligerency led to any physical altercation in the vehicle during that trip?





A. **No. Only the challenge of it. I broke your fucking ass. Fuck you. Fuck you. Excuse my language. But I'm in the middle. I'm telling them shut the fuck up. Knock it off.**

Q. Prior to that date had you ever seen any kind of conflict between David Nawai and Mark Begley?

A. **No.**

Q. And, I take it, they had known each other for some time prior to that date?

A. **Yes, I believe so.**

Q. How would you describe their relationship, if you knew?

A. **Just like, you know, all friends. All friends.**

Q. So you get to Buddy Wilson's house. What happens there?

A. **Mark is still challenging Dave to go behind, meet him behind the prosecutor's office. He's still going off. Dave was, at the point he was telling me, you know, don't talk to him like that. Begs, you cannot talk to me like that. But Mark insisted he wanted to settle this like a man. He used that several times. Man to man. Let's go right now behind, go to the prosecutor's office.**

**Mark wanted me to jump in his truck with him. Dave wanted me to jump in his truck with him. Buddy had enough. He said enough. He's going inside. He had**





**enough of this bullshit. He's going inside. I told Buddy don't worry about it. I'm taking care of them, meaning that I'm going to take care of them. Not thinking that they're actually going to have any physical confrontation.**

**Mark had taken off already. And I just happened to be closer to David's truck. That's why I got inside his truck. All he was saying is Begs is not going to talk to me like this. Going over, which is about a minute away, two minutes away, he didn't say he was going to broke anybody's ass or anything like that.**

**So we drove over there. Mark's truck was reversed up towards the baseball diamond. Dave drove up. Maybe it -- Maybe he was about 15 yards away, 10 to 15 yards away. I just sat in the truck, Dave's truck. Mark got out of his vehicle. And Dave got out of his vehicle. And Mark started walking towards the truck. Dave got out and was walking.**

**At one time I just saw Mark wind up and swing like he was swinging a round house punch to Dave. And then I saw Dave punch him with an upper cut to the jaw. That's when I started to get out, trying to get out of his truck. Got around the door and Dave had him by the shirt. He was in a kneeling position by that time. And then I was pissed off at that time. What the fuck are you guys doing. I was upset at both of them.**





**And Mark was -- He let him down. He was snoring. Sleeping, snoring. Tried to get him up. He would moan and stuff like that. Then I just thought he was piss ass drunk and one punch knock out. So I decided to take him home.**

Q. Did you see which hand David Nawai used to punch Mark Begley with an upper cut?

A. **His right.**

Q. Did you see where he contacted Mark Begley with the right hand?

A. **I believe it was in the jaw. I was just moving already trying to get out of the truck. He has a small truck. And I wasn't the smallest guy. So I'm not that agile.**

Q. When you came around, David Nawai had him by the shirt, and at that point Mark was in a kneeling position?

A. **Yes.**

Q. About how long was he in the kneeling position? I take it at one point he was lying on the ground?

A. **I didn't see that until we put him on the ground.**

Q. He was kneeling and you folks put him on the ground?

A. **Yes.**

Q. So you helped David put him on the ground?

A. **Yes. As best as we could. He was dead weight,**

Q. Just to kind of summarize, I th[illegible]ou testified to this earlier, just to make it clear, it's your understanding and knowledge that the Waalani family, Richard, Sr., Richard, Jr., and Ryan, are not involved in dealing drugs or other criminal activity?

**A. No. Not Senior, Junior, Ryan. They have one sister that is not part of the family anymore that's allegedly involved in drugs that when I was a lieutenant I wanted her busted. The father wanted her busted. Didn't ever get an informant to her. But as far as the father, the sons, they run their company. They're too busy running their business. They get involved in no criminal activity.**

Q. Who is Dirch Kane?

**A. Dirch Kane, his wife is a dispatcher. Dirch is a canoe coach. I knew Dirch when I was paddling the canoe from when I was 18 years old. Dirch had some problem with the authorities. He's been in and out of jail.**

Q. What kind of problems?

**A. Assault. That was his biggest problem, assault.**

Q. To your knowledge any kind of drug or other vice contacts?

**A. Only hearsay. But nothing to make a case.**

Q. What was the hearsay that you are aware of?

**A. That he might have been involved in marijuana.**





**Dirch was --**

Q. During 2002 his wife was a dispatcher for KPD?

**A. Until present. Still present, yeah.**

Q. Do you know if she was the dispatcher on duty on the night that Mr. Begley got hurt?

**A. I don't know who was.**

MR. BOUSLOG: Thanks. I don't have any further questions.

(The deposition was concluded at 10:56 a.m.)





I, MARTI[illegible]RNAN, do hereby certify that I have read the foregoing typewritten pages 1 through 62, inclusive, and corrections, if any, were noted by me and the same is now a true and correct transcript of my testimony.

Dated: ________________.

________________

MARTIN CURNAN

Signed before me this _____ day of __________ 2005.

____________________________





STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, SHEILA BRITT LIPTON, CSR NO. 257, Notary Public in and for the State of Hawaii, do hereby certify:

That on October 28, 2005, 9:04 a.m. appeared before me MARTIN CURNAN, the witness whose deposition is contained herein; that prior to being examined, the deponent was by me duly sworn; that the deposition was taken in machine shorthand by me and was thereafter reduced to typewriting under my supervision; that the foregoing represents, to the best of my ability, a correct transcript of the deposition had at that time;

That the deponent was notified through counsel, by mail or by telephone to appear and sign; that if the deposition is filed without signature, either the reading and signing of the deposition were waived by stipulation of all parties or the deponent has failed to appear, and the deposition is therefore filed pursuant to Rule 30(e), Hawaii Rules of Civil Procedure.

Date: _______

____________________

SHEILA BRITT LIPTON, CSR NO. 257
Notary Public, State of Hawaii
My Commission Expires: 5-9-2009