# MEMORANDUM IN SUPPORT OF BEGLEY'S OBJECTION TO DEFENDANT COUNTY OF KAUAI'S BILL OF COSTS

## I. INTRODUCTION

Defendant County of Kauai ("County" or "County of Kauai") states that as the prevailing party in this case, its' attorney's costs should be granted under the Federal Rules of Civil Procedure 54(d)(1) and Rule 54.2 of the Local Rules of Practice for the United States District Court for the District of Hawaii. The County also believes that its other costs, such as travel expenses are taxable as attorney's costs under 42 U.S.C. § 1988.

Plaintiff Mark N. Begley ("Begley") believes that under the guidelines established by the Ninth Circuit there is sufficient reason to deny the County's recovery of attorney's costs. Begley also believes that the County's Bill of Costs is not clearly explained, as the individual billings in its attachment rarely show any detail that would explain what was being done (copied, mailed, faxed, etc.) and for what purposes. Begley does not believe "other costs" such as airfare are taxable as attorney's COSTS under Rule 54 (d) of the Federal Rules of Civil Procedure or under Hawaii District Local Rules 54.2.

## II. DISTRICT COURT HISTORY

On April 8, 2003 the attorneys for Plaintiff Mark N. Begley (" Begley"), filed a complaint on his behalf against Defendants County of Kauai, Kauai Police Department ("KPD"), George Freitas ("Freitas"), Martin W. Curnan ("Curnan"), and David Nawai ("Nawai").

On January 28, 2005 the District Court, Judge David A. Ezra, filed an order denying Motions for Dismissal and Summary Judgment by Defendants Curnan and Freitas.

On July 26, 2005 the District Court, Magistrate Judge Kevin S. Chang, issued an order granting in part and denying in part Defendant Curnan's renewed Motion for Summary Judgment.

On October 4, 2005 the District Court, Magistrate Judge Kevin S. Chang, issued an order granting Defendant Freitas' renewed Motion for Summary Judgment (and Defendant County of Kauai in joinder), dismissing those defendants from the lawsuit.

On November 11, 2005 Magistrate Judge Kevin S. Chang mediated a settlement conference between Begley and the various defendants.

On January 17, 2006 a status conference was held. Magistrate Judge Kevin S. Chang again mediated settlement discussion between Begley and the various defendants. No settlement was reached.

On February 10, 2006 Begley's attorney, Chris Bouslog, withdrew as co-counsel for Begley.

On March 7 and 8, 2006, the remaining claims against Curnan and Nawai came before the District Court for a bench trial.

On March 9, 2006, the District Court granted Curnan's motion for involuntary dismissal of the claims of conspiracy and intentional infliction of emotional distress. The court also granted defendant Nawai's motion for involuntary dismissal of the claims of conspiracy, intentional infliction of emotional distress, violations of 42 U.S.C 1983, and false imprisonment.

On April 6, 2006 the District Court entered judgment in favor of defendants Curnan and Nawai as to all remaining claims pursuant to "Findings of Fact and Conclusions of Law" filed on March 30, 2006.

On April 7, 2006 Begley filed a Notice of Appeal to the Ninth Circuit Court of Appeals regarding the District Court's various judgments in favor of the defendants.

On April 11, 2006 the District Court entered an amended judgment in favor of the various defendants pursuant to the District Court's prior granting of Summary Judgment in favor of the various defendants

On April 17, 2006 Begley filed his Designation of Record on Appeal.

On April 20, 2006 Defendant Freitas filed a motion for his attorney's fees and costs.

On April 25, 2006 Defendant Curnan filed a Bill of Costs and memorandum in support of Bill of Costs.

On April 26, 2006 Defendant County of Kauai filed a Bill of Costs and memorandum in support of Bill of Costs.

On May 11, 2006 attorneys Richards and Zenger withdrew as counsel for Begley. The District Court gave Begley until May 31, 2006 to file any objections to the defendants' Motion for Fees and Bills of Costs.

**III. ARGUMENT**

Begley understands that Rule 54(d) creates a presumption in favor of awarding costs to a prevailing party. However, it also gives discretion to the District Court to refuse to do so. Berkla v. Corel Corp., 290 F.3d 983, 995 (9th Cir. 2002)

The losing party must show why costs should not be awarded. Stanley v. Univ. of Southern California 178 F.3d 1069, 1079 (9th Cir. 1999), Nat'l Info. Servs., Inc. v. TRW, Inc., 51 F.3d 1470, 1471-72 (9th Cir. 1995)

A District Court can "specify reasons" for its refusal to tax costs to the losing party. Assoc. of Mexican-American Educators v. California, 231 F.3d 572,

591 (9th Cir. 2000); Subscription Television, Inc. v. Southern Cal. Theatre Owners Ass'n, 576 F.2d 230, 234 (9th Cir. 1978)

In *Stanley*, the Ninth Circuit held that the district court abused its discretion in rejecting a losing civil rights plaintiff's motion to deny costs to the defendant without considering: (1) the plaintiff's limited financial resources and (2) the chilling effect on future civil rights litigants of imposing high costs. *Stanley*, 178 F.3d at 1079.

The Ninth Circuit has so far approved several factors that would justify a district court's refusal to award costs to a prevailing party:

1. The losing party's limited financial resources. National Org. for Women v. Bank of Cal., 680 F.2d 1291, 1294 (9th Cir. 1982)

2. Misconduct on the part of the prevailing party. National Info. Servs., Inc. v. TRW, Inc., 51 F.3d at 1472 (9th Cir. 1995)

3. The importance of the issues. Assoc. of Mexican-American Educators v. California, 231 F.3d 572, 593 (9th Cir. 2000)

4. The importance and complexity of the issues,

5. The merit of the plaintiff's case, even if the plaintiff loses, and

6. The chilling effect on future Civil Rights litigants of imposing high costs. Stanley v. Univ. of Southern California, 178 F.3d at 1079 (9th Cir. 1999)

Also see Save Our Valley v. Sound Transit (9th Cir. 2003).

**1. Begley has limited financial resources.**

Begley supports three (3) children who live at home, one of which is preparing for college. He pays a mortgage and several other loans. He is not an "organization". He continues to work for the Kauai Police Department, but his personal income and amount of overtime pay has been limited since the assault in 2002. Begley still has medical expenses. He still suffers the effects of the serious closed-head injury he received on May 17, 2002, and still takes prescription medication accordingly (Tramadol and Nortriptyline).

To pay a combined total of about $50,000 in attorney's fees and costs (based on the requests of Defendant's Curnan, Freitas and County of Kauai), would probably require the sale of Begley's house. Begley has already sought a home equity mortgage, and was denied. He has also inquired with the only listed bonding companies in Hawaii, neither of which offers an appeal bond. Begley is representing himself Pro Se before this court, and in his appeal to the Ninth Circuit Court of Appeals. Whatever monetary resources Begley has, or will have, Begley will need for his own representation. If Begley is forced to sell his house, or again seek a home-equity mortgage, the time involved (especially during the pendency of Begley's appeal) and any resulting loss or stress would probably be insurmountable.

To grant the County's request for attorney's costs would cause irreparable harm to Begley and his family. To deny the County's request for attorney's costs would not cause irreparable harm to the County or the County's attorney. **All attorney's fees and costs for the County's defense were allocated by the Kauai County Council for payment by the County of Kauai.** Over $100,000 was appropriated by the County for this purpose. The County of Kauai has its own full-time staff of County Attorneys, yet the County selected a large Honolulu-based attorney's firm to represent the County.

**2. The County of Kauai has made significant misrepresentations to the District Court and the Plaintiff during the course of this case.**

On January 24, 2005 there was a hearing before the District Court, Judge David A. Ezra ("Judge Ezra"), regarding Motions for Dismissal and Summary Judgment by Defendants Curnan and Freitas. During that hearing, the District Court gave Begley's attorneys a discovery extension because criminal investigations by the Kauai Police Department had not previously been completed. The criminal report of the assault on Begley was not yet available. At that time, Judge Ezra warned the County of Kauai to promptly produce documents. **See page 15 of Attachment "A"** (the Transcript of Proceedings before the Honorable David Alan Ezra, Chief United States District Judge, on January 24, 2005.) Attorney

David Minkin ("Minkin" or "Mr. Minkin"), representing the County of Kauai, told the Honorable David Alan Ezra that he (Minkin) anticipated "being able to produce the County police reports early next week" (Transcript of Proceedings page 15 at line 23). **Mr. Minkin did not**. In fact, Mr. Minkin did not produce any of the County police reports until five months later, on June 21, 2005, after renewed motions for summary judgment had been filed with Magistrate Judge Kevin S. Chang, and several weeks after Begley's attorneys had filed another request, and then a subpoena for the documents.

The fact is that MR. MINKIN HAD A COPY OF THE REPORT ON BEGLEY'S ASSAULT FROM JANUARY 18, 2005, PRIOR TO HIS HEARING BEFORE THE HONORABLE DAVID ALAN EZRA. Mr. Minkin LIED TO THE COURT, and then WITHHELD PRODUCTION of KPD DOCUMENTS from Begley for another 5 months. **Refer to Attachment "A".**

When the County of Kauai's production of documents, numbered C0001-C0440, was finally made to Begley's attorneys, only a very small portion of the documents that were requested from the County of Kauai on 05/24/05 and 06/01/05 respectively, were included. **See Attachment "B"**. The limited documents surrendered by the County of Kauai remain incomplete. Four (4) listed witness statements from the assault investigation, including a tape-recorded statement, were not turned over to Begley or his former attorneys as requested.

This includes statements identified (but not present in the police report produced by Mr. Minkin) as those of Alfred Dannog, Pauli Velasquez, Robert Miguel, and Rae Hiramoto. **Refer to the last page of Attachment "A".** Approximately half of the County's disclosure consisted of duplicates.

Other requested KPD reports have not been surrendered. The County has made the inference that the other documents requested by Begley do not exist. However, Begley knows for certain that other identified documents do exist because he has read them. Fellow KPD officers, and witnesses known and identified by Begley, were involved in these investigations.

**3. The issues at hand are paramount.**

As of this writing, the Kauai Police Department has still not instituted an internal affairs unit, nor does it have any personnel permanently trained and assigned for that purpose. The County of Kauai continues to receive new claims and lawsuits against KPD and its Police Officers at an alarming pace.

Police Officers in small communities, such as Kauai, are well recognized by the public and shown a level of fear and/or respect regardless of whether the officer is in uniform or not, and regardless of whether the officer is working his regular tour of duty or not. A Police officer and his Department should not find refuge from the "Color of Law" because they wait until they finish their regular

shift to promulgate illegal activity, or because they don't flash their badge and gun before they ratify illegal and unconstitutional acts in the furtherance of the unwritten policies and/or customs of their agency.

**4. The importance and complexity of the issues, and**

**5. The merit of Begley's case**

It is uncontroverted in Begley's case that Lieutenant Martin Curnan was the Vice Commander, and Acting Assistant Chief over the KPD Investigative Services Bureau, on May 17, 2002, the day of Begley's serious injury.

It is uncontroverted that Sergeant Mark Begley received a serious closed head injury, including brain damage and clinical evidence of a basilar skull fracture, while in the company of Curnan on the night of May 17, 2002. Begley still suffers from the results of those injuries today, and still uses prescription medication.

It is uncontroverted that Sergeant Mark Begley was a subordinate officer to Curnan that day, and had always been a subordinate officer to Curnan during the years prior.

It is uncontroverted that Lieutenant Curnan invited Begley to Curnan's KPD office during regular work hours that day of May 17, 2002. (Begley and Curnan disagree on who called who.) Begley met Curnan in front of Curnan's KPD office

that day. Curnan was waiting in Curnan's KPD vice truck, at the KPD parking lot in front of Curnan's office, when Begley arrived.

It is uncontroverted that Lieutenant Curnan told Begley to get into his KPD truck, and then drove Begley to a cane field where Curnan's family members were working, and invited Begley to have a beer with Curnan. (Begley and Curnan disagree on the route that Curnan took to the cane field, and whether Curnan initially told Begley where they were going.)

It is uncontroverted that Lieutenant Curnan was at the same location as Begley throughout the remainder of the evening. It is uncontroverted that Lieutenant Curnan was with Begley in transport to every location that evening except for the short drive allegedly from Buddy Wilson's house to the prosecutor's office parking lot behind the old Dairy Queen in Lihue. By Curnan's own admission, he and Defendant Nawai left Wilson's house together, shortly after Begley left, and they followed Begley to that location.

It is uncontroverted that some type of assault occurred that evening in the presence of Lieutenant Curnan, and that Begley, who was the only person injured, received a serious closed head injury.

It is uncontroverted that Lieutenant Curnan did not stop the assault, did nothing to report the assault, did not seek medical attention for Begley, and then lied to Begley's wife regarding the cause of Begley's injury and condition.

**A special relationship existed** between the acting Assistant Chief of Police, Lieutenant Curnan, and Begley. Begley was Curnan's subordinate and had followed Curnan's orders, directions, and requests for years. However, Begley had also questioned Curnan regarding the alleged criminal activity of Curnan's friends and family members. On the day of Begley's serious injury, Begley once again warned Curnan to curtail Curnan's association and protection of some of these people. Curnan testified (at the bench trial on March 7, 2006) that just prior to Begley's serious injury that night, Curnan told Buddy Wilson that **Curnan would take care of Begley**. Curnan also testified that before Curnan drove with Nawai to Begley's location at the prosecutor's office parking lot, **Curnan knew** there might be an affray between Nawai and Begley. **Refer to Attachment "C" for Curnan's statements**. When Curnan drove the seriously-injured Begley home, he lied to Begley's wife regarding the causation of Begley's injuries, discouraging her from seeking medical attention for Begley. Several months later, when Begley finally returned to KPD on light duty status, Lieutenant Curnan visited Begley during work hours in the office where Begley was working, and **told Begley to back him (Curnan) up.**

**A special relationship existed** between the Acting Assistant Chief of Police, Lieutenant Curnan, and the Chief of Police, Defendant George Freitas.

Prior to the assault on Begley, Curnan claimed that Curnan and Chief Freitas were "in the same boat". Chief Freitas had not taken any action on prior reports of wrongdoing by Curnan. After the assault on Begley, and before Begley's return to KPD on light duty status, Chief Freitas told Begley that Curnan was a nice guy and Begley should think the same way. Chief Freitas did not immediately investigate the assault on Begley, and never conducted an internal investigation into the activities of Curnan that night. During the tardy KPD criminal investigation, KPD investigators told Begley that they only had one suspect, David Nawai (who KPD eventually arrested for Assault 1st degree). Curnan was never treated as a suspect, or even as an accessory to the assault. Among other adverse and retaliatory acts, Chief Freitas threatened to fire Begley if Begley had a permanent injury and Begley did not obtain clearance for full duty status. Freitas questioned Begley, and then inquired with other KPD staff whether Begley was going to file a lawsuit. Freitas warned Begley not to talk to the press about what happened to Begley the night Begley was injured. All of these acts were done during regular work hours and while Freitas was the Chief of Police for KPD.

"A conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement." Ward v. Equal Employment Opportunity Comm'n, 719 F.2d 311, 314 (9th Cir. 1983)

A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from the defendant's actions. "Acts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir. 1987) and United States v. Batimana, 623 F.2d at 1368 (9th Cir. 1980)

In Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978), the Ninth Circuit held that "***personal participation is not the only predicate for section 1983 liability.***" Gilbrook v. City of Westminster (9th Cir. 1999)

Begley believes that the purpose of the serious assault on Begley, the so-far successful attempt to cover it up, and the retaliatory acts by Freitas against Begley, were for the purpose of quieting Begley. By acts of commission and omission, the Acting Assistant Chief, Lieutenant Martin Curnan, and Chief Freitas certainly did their part to contribute to this purpose.

Even viewing Defendant Curnan's admissions in the light most favorable to Defendant Curnan, there is still indication that he was part of the conspiracy. See United Steelworkers, 865 F.2d at 1541 "Evidence that police failed to exercise independent judgment will support an inference of conspiracy with a private party." Gilbrook v. City of Westminster (9th Cir. 1999)

**During a settlement conference on November 22, 2005**, Begley and his former attorney, Chris Bouslog, were present in the chambers of Magistrate Judge Kevin S. Chang ("Magistrate" or "Magistrate Chang"). The Magistrate mentioned to Begley that Magistrate Chang's parents lived on the west side of Kauai. The Magistrate's parents had mentioned to him (the Magistrate) that people on Kauai tend to look out for each other. The Magistrate verbally recognized Begley's role as an instructor for the Kauai Police Department and Begley's knowledge of KPD standards of conduct. Magistrate Chang also stated that he (the Magistrate) would like to get some money for Begley, but the County of Kauai was saying that they had no money. Magistrate Chang offered to work with Begley and the County of Kauai to negotiate an acceptable settlement. The Magistrate suggested a County of Kauai commitment to the formation of an internal affairs unit for KPD as the terms for Begley's settlement. This interaction and comments by Magistrate Chang did not indicate that the Magistrate believed Begley's claims were without merit.

**6. The chilling effect on future Civil Rights litigants of imposing high costs.**

The defendants in this case are requesting a total of about $50,000 in attorney's fees and costs. This would have a significant and irreparable impact on Begley and his family, but it would have an even more chilling effect on many

other Kauai residents who are paid less, and find themselves interacting with Kauai Police Officers on a daily basis (especially considering the very high cost of living in Hawaii and the very limited housing on Kauai).

## COUNTY'S BILL OF COSTS

28 U.S.C. 1920, 28 U.S.C. 1821, and Local Rule 54.2 describe what may be claimed in the taxation of attorney's costs. The party seeking costs carries the burden of establishing the amount of compensable costs and expenses to which it is entitled. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248, 1249 The awarding of costs also turned on whether or not the costs were for materials necessarily obtained for use in the case.

In the County of Kauai's memorandum in support of its bill of costs, page 4 "other costs", the County states "All of these costs (travel, etc.) are recoverable as actual litigation expenses under 42 U.S.C. § 1988. See Robinson v. Scholastic Book Fairs". The County seeks recovery of **$438.04** in travel expenses. See the County's attachment, billing references # 31, 69, 131, 232, 259, and 260 for outer island airfare, rental car and parking expenses of Attorney David Minkin.

The County of Kauai misinterprets and omits significant court opinion found in Robinson v. Scholastic Book Fairs, 928 F. Supp. 1027; U.S. Dist. LEXIS 7059, and affirmed by the Ninth Circuit, 116 F.3d 485; 1997 U.S. App. In *Robinson*, a

successful plaintiff sought recovery of her attorney's fees AND costs. The court stated that neither 42 U.S.C. § 1988 nor § 12205 defines "costs", therefore the court presumed that those cost-shifting provisions permit recovery of only the types of costs allowed in 28 U.S.C § 1920 and § 1821. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444-45, 96 L.Ed. 2d 385, 107 S. Ct. 2494 (1987). University Hospitals, Inc. v. Casey, 499 U.S. 83, 87 n.3, 113 L.Ed. 2d 68, 111 S. Ct. 1138 **(Rule 54(d) "is to be read in harmony with the word 'costs' in 28 U.S.C. § 1920... and we think the same is true for the word 'costs' in § 1988.**" (citing Crawford Fitting at 445) Emphasis added.

Agredano v. Mutual of Omaha Companies, 75 F.3d 541, 544 (9th Cir. 1996) held that the court was "to award only the types of costs allowed by 28 U.S.C. § 1920 itself, by 28 U.S.C. § 1821 or by similar such provisions." Consequently, the recoverable costs under § 1988 and § 12205 include only those costs listed in 28 U.S.C. § 1920 and § 1821, *Robins v. Scholastic Book Fairs*.

In *Robins*, the court found that the miscellaneous expenses were NOT 'costs" under 28 U.S.C. § 1920, but they were recoverable as part of the attorney's FEE. This is separate ("distinct") from the costs (42 U.S.C. § 1988). The County of Kauai has not argued that Begley's lawsuit was frivolous and that the County should therefore be allowed to recover attorney's FEES. Christianburg Garment v. EEOC, 434 U.S. 412, 421.

Local Rules for the District of Hawaii, LR54.2 (f)(2) state that the expenses of counsel for attending depositions are not allowable. It certainly does not allow for counsel's travel expenses for county council meetings. "Mileage payments" are allowable for witnesses, not counsel, LR54.2 (f)(3).

The County of Kauai lists **$1104.90** for in-house photocopying, and **$70.19** for photocopying of other records. Though the County has submitted a declaration with a general statement to justify all of its requested costs, neither the declaration nor the attached billing record gives any specific description of each of the many items copied or their intended purpose. Without specific justification for each item, it is impossible to justify that copies were not made simply for convenience of the County and other interested parties, or that the various copies were even applicable to the Begley case. In the County's attachment to its Bill of Costs, ONLY reference numbers 55, 56, 57 and 130 give any applicable description of the copies made. Those reference numbers are described as copies of Queen's Hospital medical records, Kauai Medical Clinic records, Wilcox Memorial Hospital records, and copies of an Amended Rule 16 Scheduling Order, totaling **$26.50** in applicable copying costs. All other listed Xeroxing charges, totaling **$1,148.59**, have comments such as "Johnny", "Virgil" or initials, which give no apparent applicability to Begley's lawsuit.

The County's billing reference #288, on 06/23/05, is **$287.72** for the deposition of Dwight Nadamoto, Attorney General's office. Defendant Martin W. Curnan's attachment to his Bill of Costs, reference # 777, also **lists this same expense.** Reference # 104, on 02/09/04, in the attachment to the County's Bill of Costs, **is described as a refund of $87.40 to the County of Kauai** for their double-payment. **Refer to Attachment "D"** for the County's attachment to its Bill of Costs.

## IV. CONCLUSION

For the reasons stated above, Begley asks the District Court to deny Defendant County of Kauai's entire Bill of Costs.

DATED: Kapaa, Kauai, Hawaii, May 30, 2006

MARK N. BEGLEY
5318 Makaloa Street
Kapaa, HI 96746

Pro Se Plaintiff